Howabd T. Hogan, J.
In this consolidated joint ratio trial involving 14 proceedings totaling 39 years under review, respondent moves by an order to show cause to:
1. Require petitioners to serve and file forthwith certified copies of the final State equalization rates established for Nassau County rolls containing the assessments under review upon *822 which petitioners will rely, from May 1, 1965 through May 1, 1973;
2. Permit the examination before trial pursuant to article 31 of the CPLR of the State Board of Equalization and Assessment by examination of its Director of Research and Statistics, Samuel J. Stein, and its Director of Equalization, Hollis A. Swett, concerning all relevant facts and circumstances in connection with the State equalization rates established for the rolls containing the assessments under review, and further requiring the State Board of Equalization and Assessment to produce at the hearing certified copies of certificates of final State equalization rates for the County of Nassau for each of the years at issue and to produce at such examination all relevant facts, formulas, calculations, copies of any and all computer programs utilized to make all calculations, all computer print-out sheets, all computer produced tables, statistics, appraisals, manuals, supplements and amendments thereto, sales verification reports and market value surveys used by the State Board in establishing the State equalization rates for the rolls containing the assessments under review; and
3. Permit respondent to inspect, copy, reproduce, test or photograph the above data, and to permit respondent to reproduce any and all relevant facts, formulas, calculations, copies of any and all computer programs utilized to make or perform all calculations, all print-out sheets, all computer produced tables, statistics and all other matters and items hereinabove referred to in Item No. 2 or in lieu of discovery and inspection, to require the State, board to furnish, prior to the examination before trial certified copies of all of the above data and to certify to the court that the material and data so produced are all of the data and material relied upon by the State board in establishing State equalization rates for the rolls containing the assessments under review.
At the outset it is observed that this ratio trial, which has been pending since August, 1973, will take many weeks and will be severely contested. At issue is the tax structure for all of Nassau County and its some 400,000 parcels of real property. At issue, too, is the reliability and applicability of the State equalization rate to Nassau. Is this rate representative of true values or as respondent contends, inapplicable f In establishing ■the equalization rates, does the State board rely upon statistical data from 1949 and 1952 as part of its base! If the State board does rely in whole or in part on data and prior surveys going back to 1949, how may the respondent and/or any taxpayer *823 analyze the accuracy and reliability of the rates, absent having available all the data leading to establishment of these rates within the taxing unit of Nassau? Is the respondent entitled to full details of the sales relied upon by the State board and the details of the verification procedure they employ so that respondent may test its accuracy? Is respondent entitled to all appraisals which are in the nature of opinion evidence, all appraisals made in the field and facts, figures and calculations and comparable data upon which these are based? May respondent examine before trial the State board through its qualified directors, Mr. Stein and Mr. Swett, relative to the appraisal procedures, processing of material and all aspects of its market value surveys including the selection of parcels for appraisal and the method of selection of those fed into the computer?
Another important question is whether the trial court may accept the material found in the computer print-outs as prima facie proof, without granting the respondent the right to inquire into and test the validity of the background data, methodology of analyzing and selecting sales, adjustments and weight accorded all of this, data? Moreover, how does an individual taxpayer obtain relief if he believes the State equalization rate is erroneous? Is the rate established by the State board for each taxing unit in the State prima facie evidence of its validity? Does Nassau, respondent herein, as one of the two counties which serve as the taxing unit for the towns, cities and villages, have a legal right to object to the State rates as applied to it? What is done with partially exempt property, i.e., how is it treated in arriving at the rate? Is the sampling used by the State board representative of properties in Nassau?
Has the Legislature by giving this statute (Beal Property Tax Law, § 720) lawful sanction and thereby permitting its admissibility into evidence imposed such a gigantic burden upon a taxpayer or municipality that it is unfair, unjust and inequitable and virtually denies due process ?1
The foregoing is a general outline of that which respondent now seeks to determine in this motion and is substantially its position.
It appears the board feeds into its computers the entire assessment roll of the county, with each property coded as to its category, be it residential, industrial or commercial. A random sampler then extracts from this entire list a preselected number of samples in each category to be appraised by the field personnel of the board. The results of these appraisals are fed *824 into the computer as well as actual sales. This data is weighted to arrive at the rate.
Since the petitioners intend to introduce the State rates, the respondent seeks this detailed examination. The State hoard opposes this motion on the ground it would be unreasonable to require high level personnel to testify in each and every assessment review proceeding which may be commenced concerning some 1,500 assessing units in the State and upon the further ground the data and material sought were not adequately described. In lieu of the examination the State board has offered to give both parties: (1) Copies of the data upon which State equalization rates were determined; (2) Certified statements as to its statistical procedures and appraisal procedures; and (3) Agreed to answer such written interrogatories relating to the. foregoing as approved by the court.
Respondent, at the court’s suggestion, visited the State board’s office in Albany on two occasions, the last visit being with its statistician to examine material and data and to discuss at some length with Mr. Stein the data and procedures. This State board has demonstrated its complete co-operation. They have furnished respondent literally with reams of data and material. Among these are: outlines of market value procedures 1959-1963 and 1965; program specifications for classification of assessment rolls and selection of sample parcels for 1968 survey; market value standards used in establishing equalization rates for the cities and towns in Nassau; 1965-1973 tables and preliminary analysis for each year for which tables and analysis were prepared; a list of the tables included in the equalization rate data for each year; documentation for the programs employed in computation of market value ratios and ‘¡State rate; equalization rate tables for the 1973 roll for the Town of Hempstead and certificates of the State rates for Nassau, 1965-1973.
This court cannot commend too highly the complete co-operation of this agency of government to provide respondent with any and all material it sought.
Despite all this, respondent now argues that such material and data are still insufficient, and not only does it require the testimony of Mr. Stein and Swett but also the examination of each appraiser employed by the State and an examination of their appraisals in Nassau; and an examination of each sale used by the State board in determining the State equalization rates for the three towns and two cities. This would entail conservatively reviewing data involving some 2,000 appraisals and *825 6,000 sales. If each taxing unit of the 1,400 in the State were to seek the same relief, there would be chaos. In fact, to grant this relief would delay this trial for several years, involve enormous expense to both respondent and the State without any assurance that such a program would result in anything other than more obfuscation.
Our highest court has recently ruled on the validity of State equalization rates. (Guth Realty v. Gingold, 34 N Y 2d 440.) In this- case the petitioner sought to impeach the State board’s data and methods. The record in Guth sets forth in detail in the testimony of Messers. Swett and Stein all of the methods and. procedures followed.
The Court of Appeals found that the equalization rates today reflect more accurately the ratio of assessment value to full value than the ratio produced by either the actual sales or selected parcel methods, for the reason the State rates are based upon larger appraisal samples than any of those presented to the court by the other methods.
Moreover, these rates obtained are based upon samples of representative categories, that is, industrial, commercial and residential. Judge Gabbielli, writing for the court, stated (34 N Y 2d 440, 449-450, ,supra) “ the selected parcel and actual sales methods not only create discouraging and enormous expense for the taxpayer, but promote the search by both sides for samples which are at the extreme ends of the spectrum — the same egregious problem we seem always to find in expert valuation testimony in condemnation cases. Utilization of the equalization rate which is objectively arrived at, and which today is expertly arrived at, would tend to greatly simplify and narrow the scope of these proceedings.”
This holding does not preclude the taxing district from establishing that the equalization rate is inappropriate to the taxing unit. He stated (p. 451): “ Of course, the taxing authority will always be entitled to show that the equalization ratio is inappropriate to the taxing unit, to the category of property involved and to the particular property or any other valid reason which would affect its relevancy or weight. The same questions then arise as would respecting any sort of proof; its weight and application are subject to .judicial decision which can be reviewed on appeal.”
In other words, the rates as found by. the State are open to impeachment.
The State equalization rate does not purport to measure the ratio of assessed valuation to the full value of any particular *826 property. (Bucho Holding Co. v. Temporary State Housing Rent Comm., 11 N Y 2d 469.) Instead, it reflects the percentage of,full' value at which the assessors are assessing all taxable real property in a given locality.
Our Court of Appeals has held these rates as established by the State Board of Equalization and Assessment to be valid and to be entitled to considerable weight. They are admissible. The degree of weight to be given is left for determination by the trial court.
The State rate is neither incontrovertible nor incontestable Appraisal of real property is not an exact science. Judgments must be made from all the assembled data. “ An appraisal of value is an estimate. It is an opinion. The reliability of an appraisal * * * depends upon the basic competence and integrity of the appraiser, and upon the soundness and skill upon which he processes pertinent data ”. (Appraisal of Beal Estate [6th ed.], American Institute of Beal Estate Appraisers, Nat. Assn, of Beal Estate Bds., p. 3.)
To permit that which respondent now seeks to accomplish would convert an inequality issue into a colossal multi-parcel proceeding at enormous expense and negate the court’s holding in Guth (supra). Bespondent may call witnesses, produce its proof of invalidity. It may have judicial review pursuant to section 760 of the Beal Property Tax Law. It may seek relief in an article 78 proceeding. (Matter of City of Lackawanna v. State Bd. of Equalization and Assessment, 21 A D 2d 318.)
Perhaps the problem is best expressed by the late Judge Loughbam", writing for the majority (People ex rel. Hagy v. Lewis, 280 N. Y. 184,188): “ We cannot say that such a process is inadequate for practical attainment of the rough inequality which is all that has heretofore been possible under any system of taxation.”
Neither the holding in Guth nor the 1969 amendment to subdivision 3 of section 720 of the Beal Property Tax Law (L, 1969, ch. 302, § 1) was intended to nor did it make the State rate prima facie evidence in an inequality case. Neither did these specify ■the degree of weight to be accorded the State equalization rates. That obviously is for the trial court after considering all the evidence.
If, as respondent contends, the parcels selected are not representative, it may obtain a list of only those parcels and sales actually used and relied upon iby the State board. These it may contest.
*827 This motion has been brought on the eve of the trial of this ratio case. Further delay will only work undue hardship. The trial of the sample parcels shall first proceed on the scheduled date.