Morrie Slifkin, J.
In a tax certiorari proceeding in each of the above-entitled actions involving the same property, but against the different municipalities, petitioner moves for an order confirming the report of the Referee fixing the assessed *644 valuations, fixing the fees of the referee, and granting petitioner costs and disbursements.
Generally, opposition to the motion to confirm relates to the claimed failure of petitioner to establish the equalization rate to be applied to the fair market values of the properties found by the Referee and to the method and the evidence whereby the referee made his findings of value. A further objection is made as to 1971-1972 by the town noting that the Referee reduced the assessment to a figure below the amount sought in the grievance and in the petition.
The primary area of dispute relates to the use of the equalization rate to be applied. As pointed out in Guth Realty v Gingold (34 NY2d 440, 446) by Judge Gabrielli: "There is a two-step process in proving an inequality case. The petitioner must prove a proper ratio of assessed value to fair market value, and then he must establish the fair market value of his property. Proof on these two points then leads to the application of a simple arithmetic process whereby ratio times market value equals proper assessed valuation.”
As instructed by Judge Gabrielli, this court will first deal with the problem of establishing a proper ratio of assessed value to fair market value. In these proceedings, the years which were involved are as follows:
The Town of Eastchester from 1967 to 1974 and with respect to the Village of Bronxville, the years from 1970 to 1974.
In turn, the issues as to the equalization rate to be applied must also be grouped into two separate time periods.
With relation to the Town of Eastchester, the first time period runs from 1967 to 1971 and the second period runs from 1971 to 1974. With relation to the first period as to the town, for the years 1967 to 1971, petitioner served notices to admit ratio pursuant to section 716 of the Real Property Tax Law and respondent failed to deny these notices. By failing to deny the ratios set forth in the notices sent under section 716 of the Real Property Tax Law, the respondents admitted the rates as required by the provisions of that section. Further, under the holding of Matter of O’Brien v Assessor of Town of Mamaroneck, 20 NY2d 587, 590-591), by failing to deny the ratios set forth in the notices sent under section 716, the respondents were precluded from questioning those ratios at the trial or from avoiding their application to the fair market value of the property as found by the trier of the facts.
*645 At this point, it is to be noted that at no time did the respondent village deny notices to admit ratios for the years 1970 to 1974.
Accordingly, therefore, to the extent that the Referee found that the ratio to be applied for the years 1967 to 1971 as to the Town of Eastchester and for the years 1970 to 1974 for the Village of Bronxville, to be those demanded in the section 716 notice which ratios represented the State Equalization Board rate, the finding by the Referee is confirmed on the theory that the failure to deny the ratios is deemed an admission and stipulation as to the ratios and their uses. Had respondents denied the notices to admit, respondents could then have relied on the holding of Matter of O’Brien (supra), that for the period of 1967 to 1969, a petitioner may not rely solely on the State equalization rate to prove inequality. Under that decision, and for the years in question, unless the other conditions of subdivision 3 of section 720 of the Real Property Tax Law as amended by chapter 942 of the Laws of 1961 are met, the rate standing alone is insufficient. (See, also, Guth Realty v Gingold, 34 NY2d 440, 443, supra.)
Dealing with the years involved after the above period, to wit, the years 1972 to 1974, a different situation exists as to the town by reason of the fact as to those years, the town did, as found by the Referee, deny the notices to admit the rates served by the petitioner under section 716 of the Real Property Tax Law. At the hearing before the Referee, the sole evidence relating to the ratio existing between the assessments and the fair market value of the realty consisted of a stipulation between the petitioner and the respondent that the percentages marked into the record were the ratios fixed by the State Board of Equalization and Assessment for the years in question for the Town of Eastchester, but the respondent refused to stipulate to the use or to the correctness of the said rates of the State Board of Equalization. In the proceeding at bar, in his report, the Referee found the rates to be applied were those stipulated to be the ratios fixed by the State Board of Equalization and Assessment. It is of significance that petitioner offered no proof other than the stipulated figure to establish the ratios. The respondent offered no testimony of any kind with relation to the ratios so stipulated by the terms of that stipulation.
Two issues are presented to this court: (1) may a petitioner rely solely on the equalization rate established by the State *646 Board of Equalization and Assessment for the particular municipality to establish the percentage of full value at which properties in the assessing unit are assessed; and (2) if so, has petitioner in the instant proceeding established that rate in conformity with the requirements of the case law.
These issues were before the court in Guth Realty v Gingold (41 AD2d 479, affd 34 NY2d 440, supra). There, the trial court held that under the 1969 amendment to section 720 of the Real Property Tax Law, the equalization rate could be used as the sole basis to find the appropriate ratio and thus, utilize the State rate for the years in issue 1964 to 1970. The Appellate Division, Third Department, modified as to the years prior to 1970 on the grounds that while the equalization rate could be used for the court’s decision for 1970, the fact remained that the statute, subdivision 3 of section 720 of the Real Property Actions and Proceedings Law, before its 1969 amendment, did not permit a finding of inequality in assessment for the years 1964 to 1969 based solely on evidence of the equalization rate as fixed by the board (Matter of O’Brien v Assessor, 20 NY2d 587, 595, supra).
The Third Department went on to conclude that for the years after the effective date of that amendment of 1969, the State rate could be relied upon. The Appellate Division then went on to consider the actual sales and comparable parcels submitted and made findings for the years 1964 to 1969.
The ultimate result of the appeal to the Court of Appeals was generally an affirmance. That court, by Mr. Judge Gabrielli, approved of the use of the equalization rate to establish ratio and stated that: "Utilization of the equalization rate which is objectively arrived at, and which today is expertly arrived at, would tend to greatly simplify and narrow the scope of these proceedings.” (34 NY2d 440, 450, supra.)
After thus approving reliance solely on the State rate as opposed to the use of comparable parcels and actual sales (Real Property Tax Law, § 720, subd 3), the court turned to the argument that the use of the State rate would be unconstitutional because it would be used against parties who had no standing to challenge that rate when promulgated by the administrative agency. The court rejected this claim and stated: "It assumes that the equalization rate would be automatically applied in all cases. Unless stipulated to, such would not be the case at all. The party who seeks to use the rate will *647 be put to his proof that such use is justiñed in that case. ” (34 NY2d 440, 450, supra; emphasis supplied.)
Judge Gabrielli, by applying the facts of that case, explained the phrase "will be put to his proof that such use is justified in that case” (p 450). He reviewed the testimony of Samuel J. Stein, the Director of Research and Statistics for the State Board of Equalization and Assessment, who interpreted the computer printouts, showing data making up the rate formulation, explained how it was collected and showed that it pertained specifically to the taxing unit in issue. Clearly, this constituted the justification required by the language of Judge Gabrielli.
The court then went on to state that "the taxing authority will always be entitled to show that the equalization ratio is inappropriate to the taxing unit, to the category of property involved and to the particular property or any other valid reason which would affect its relevancy or weight.” (34 NY2d 440, 451, supra.)
A review of the appellate decisions in Guth, makes it immediately apparent that while the Appellate Division, Third Department, gave blanket approval to the use of the State rate for the year 1970 and thereafter, the Court of Appeals qualified that rule with respect to the issue of how the State ratio is established where there has been no stipulation for its use or that the notice to admit has been denied. Under these latter circumstances, the Court of Appeals at page 450 placed the burden of "justifying” the use of the rates on the party seeking to rely upon the rate, usually the petitioner in these proceedings. The Court of Appeals concluded that on the facts before it, the application of the rate to the taxing unit involved had been justified through the testimony of Mr. Stein. Thereafter, the court went on to state that one resisting the use of the rate must show it is inappropriate to the taxing unit, etc.
Plainly, more must be done by the petitioner to establish the ratio to be used in the proceeding than simply having marked into evidence a certified copy of the ratio for the year in question as it applied to the municipality certified by an appropriate agent of the equalization authority. Present a denial of the notice to admit or refusal to stipulate as to its use, a further burden remains with the petitioner to justify its use. It cannot be said at that point in time, the burden of coming forward with evidence shifts to the respondent. On the *648 contrary, it is clear that petitioner in this case must furnish to the hearing court or officer the justification of the use of the rate established by the State agency.
A recent and most authoritative decision dealing with the issues settled by the Court of Appeals in Guth is Matter of 860 Executive Towers v Board of Assessors of County of Nassau (79 Misc 2d 821). Mr. Justice Hogan, noting the approval of the use of the State ratio given by the Court of Appeals in Matter of Guth, interpreted that case as permitting the introduction of the rate and granting it considerable weight. However, he did go on to say (p 826): "Neither the holding in Guth nor the 1969 amendment to subdivision 3 of Section 720 of the Real Property Tax Law (L. 1969, ch. 302, § 1) was intended to nor did it make the State rate prima facie evidence in an inequality case. Neither did those specify the degree of weight to be accorded the State equalization rates. That obviously is for the trial court after considering all the evidence.”
Thereafter a trial of the issue of ratio was held before Mr. Justice Hogan in 860 Executive Towers v Board of Assessors of County of Nassau (84 Misc 2d 525) and a lengthy decision followed.
At that trial, voluminous proof was offered on the issue of ratio but for the years following 1969, the petitioners relied on the State equalization rate as evidence of inequality and did not participate in the sample parcel selection. On this point, Mr. Justice Hogan made several relevant observations in his decision. Initially, he noted that while Guth permitted the use of the State equalization rate as the sole basis for ratio for the year 1970 and the years thereafter, it did not hold that the rate was absolute and the Court of Appeals had ruled that the party who seeks to use. the rate will be put to his proof that such use is justified in the particular case. Thereafter, Justice Hogan repeated this limitation as imposed by the highest court and concluded that it rests with the parties and the trial court to determine the quantum of proof necessary.
It is to be noted that Justice Hogan had been faced with exhaustive proof as to the methods and reliability of the State rate generally and as to Nassau County specifically. It is at this point in his decision that Mr. Justice Hogan made certain statements which this court feels cannot completely square with the direction of the Court of Appeals in Guth that one seeking to use the rate must justify it. Mr. Justice Hogan used the following language (84 Misc 2d 525, 535, 536, supra):
*649 "There need not longer be exhaustive testing of the SBEA’s [State Board of Equalization and Assessment’s] methodology, nor proof of the details of SBEA’s procedures, the same having been amply discussed in Guth and in the instant case. Unless it can be shown the rates applicable to a given tax district are completely biased or have been improperly obtained, the State rates are presumptively correct. * * *
"Since the State rates are presumptively correct (§ 720, subd. 3), there is no requirement petitioners must prove the State rates have been validly established nor that these are expertly and objectively arrived at (see Guth), or that these pertain specihcally to the tax unit involved. ” (Emphasis supplied.)
Despite the foregoing, Justice Hogan specifically points out that "petitioners seeking to use the State rate for Nassau County have met their burden of proof through the detailed testimony of experts * * * all of whom reviewed the methods establishing rates generally and two of whom testified as to those rates as applied to Nassau County.”
The detailed testimony of the experts for the petitioners was met by equally detailed testimony of experts for the respondents to disprove the State rate. Justice Hogan concluded that he would consider the State rates along with the other evidence in the proceeding before him. The point to be made is that the quoted statements above were set forth in view of what actually transpired in the way of evidence and the testimony at the trial, and this must be interpreted insofar as they may be deemed to have expanded Guth as obiter dicta.
In the instant proceeding, there was no proof of any kind by either party to either justify or to disprove the State rate. Petitioner merely relied on the State rate as stipulated by the parties, but never sought to justify it as required by the Guth decision. The court notes that one expert in this field agrees with the position taken by this court (Siegel, Guth, 860 and Hellerstein, A revolution in the World of Real Property Assessment, The Nassau Lawyer [Oct, 1975], pp 31, 34).
In the instant proceeding, therefore, this court is of the opinion that Guth requires that one seeking to use the rate as established by the State board must justify it as to the taxing unit involved. To that extent, this court must respectfully disagree with so much of Mr. Justice Hogan's decision which indicates that one seeking to rely on the State rate need not prove that the rate pertains specifically to the tax unit in *650 volved or that the State rates are presumed correct until shown to be biased or improperly obtained. This court concedes immediately that there need no longer be exhaustive testing of the State Board of Equalization and Assessment’s methodology nor proof of the general detail of that board’s procedures in view of both Guth and Matter of860 Executive Towers. However, when one seeks to rely upon the State ratio, and that ratio has been denied or has not been stipulated, then that person must justify its use by showing it pertains specifically to the taxing unit and that it is statistically accurate. Among other things, the party seeking to justify the State rate should furnish evidence among other things to show the various parcels included in the sampling by the board of the assessing unit involved and the types of property making up that sampling. It is to be borne in mind that whereas Guth and Matter of 860 Executive Towers involved assessments over very large areas and involving a great number of units, the municipalities involved in these proceedings are considerably smaller and therefore, susceptible of easier rationalization.
Therefore, while there can be no question that generally the State equalization rate is a reliable measure of the assessment ratio (see Matter of Presidential Plaza Corp. v Srogi, 50 AD2d 717) absent some evidence by the party seeking to rely on the State established rate that its use is justified, to wit, that it pertains to and is statistically accurate for the assessing unit involved, this court in reliance upon Guth concludes that the Referee in the instant proceeding erred in relying solely on the stipulations between the parties as to the State rates for the years 1972 to 1974.
By way of commentary, this court must note that were it not bound by the terms of Guth as this court understands them to be, this court would be willing to adopt a rule making the State rate prima facie evidence of rate and to adopt the methodology set forth in the obiter dicta of Mr. Justice Hogan quoted above.
Having determined that the Referee erred on the rate issue for the town for the years 1972, 1973 and 1974, the court must determine what result must follow. Respondent town argues that the petitioner has failed to meet its burden of proof on the issue of inequality for the years 1972-1974 and thus, the court should dismiss the petitions to those years. However, it is apparent that the petitioner as well as the Referee pro *651 ceeded under a misapprehension as to the state of the law on the issue of ratio. Such a misapprehension is entirely understandable in view of the confusion as to the state of the law and as the application of that law has been interpreted in various trial parts of the State.
Therefore, in the interests of justice, if the finding of fair market values for 1972-1974 as to the town can be sustained against other raised objections, the court will remit to the Referee the issue of ratio for 1972 to 1974 for a further hearing at which petitioner may attempt to justify the State ratio at the stipulated figures.
Respondent town also objects to the petitioner’s expert’s testimony as to land value since it conflicts with prior reports and no comparables were used.
To the extent that it is alleged that the testimony of petitioner’s expert as to land value is contradictory, the argument must be rejected since the Referee or the trier of the facts was in a better position to determine credibility.
Further, petitioner’s expert testified that he could not rely on comparables since there was a lack of sales of commercial property to enable him to arrive at a square foot value of land based on comparable sales. He did rely on a study he made in 1955 which he adjusted downward to reflect the declining value of the land. Further, he relied on rental values to obtain a land value. Accordingly, the court does not agree that the Referee was required to reject the petitioner’s appraisal and testimony on land value.
At bar, petitioner’s expert did testify to the factors which entered into his judgment (cf. Morio v State of New York, 34 AD2d 845).
Respondents’ claim that the court should use theoretical revenues and expenses instead of actuals is likewise without merit. There is no showing nor did the Referee find that the actual income and expenses were not the fair income or expenses (see Woolworth v Commissioner of Taxation and Assessment of City of Plattsburgh, 26 AD2d 759).
Finally, respondent town notes that for each of the years 1971 and 1972, the petition asked that the assessment be reduced to $100,000. Despite this, the Referee’s finding is $92,960 for 1971 and $87,150 for 1972. This is contrary to the law which limits a petitioner in a tax certiorari proceeding to the relief sought in the application to the board of review and *652 the petition in the article 7 proceeding (People ex rel. Interstate Land Holding Co. v Purdy, 206 App Div 606, affd 236 NY 609; Matter of Seneca Grape Juice Corp. v Board of Assessors of Town of Lloyd, Ulster County, 34 AD2d 692; Matter of J. C. P. Leasing Co. v Browne, 45 AD2d 129). In the last-cited case, the Third Department indicated that even where the parties stipulate to a reduction greater than the amount demanded, the settled rule may not be avoided. Further, to the extent that this decision is inconsistent with Matter of Reservoir Estates v Paulus (47 Misc 2d 754), and Matter of Goldstein (NYU, June 26, 1969, p 16, col 18), this court must respectfully disagree with those cases on the ground that they are based on decisions of the Appellate Division, Third Department, which are impliedly overruled by Matter of Seneca Grape Juice Corp. (supra) and Matter of J. C. P. Leasing Co. (supra).
Accordingly, to the extent that the Referee’s findings are below the assessment demanded, they must be raised to the amount demanded.
In view of all of the foregoing, the motion insofar as it seeks to confirm the findings against the village is confirmed with the caveat that petitioner cannot obtain more than it sought in its petition. As to the town, the findings are confirmed for the years 1967 to 1971 with the same caveat. However, as to the town for the years 1972 to 1974, the matter is remitted to the Referee to hear additional proof on the issue of ratio as set forth above.
Since the court is remitting the matter to the Referee, it will not pass on that part of the motion which seeks to set his fees. That portion of the motion may be reviewed at the time the final report is made as to the years 1972 to 1974. However, the court notes that the issue as to fees will be the value of the services and not the municipality’s ability to pay.