OPINION OF THE COURT
Morrie Slifkin, J.
This is the first stage of a two-part trial to reviéw the real property assessment of petitioner’s property in the City of Peekskill for the years 1971 through 1974. The trial of a tax certiorari proceeding in which the thrust of the petition is inequality, involves two aspects for the years in question: the first is the ratio between true value and assessed value in the taxing unit and the second, is the fair market value of the subject property. (Guth Realty v Gingold, 34 NY2d 440, 446; Matter of Lawrence Investing Co. v Board of Review of Dept. of Assessment of Town of Eastchester, 86 Misc 2d 642.) In *906 view of the sharp dispute as to ratio involved herein and the nature of the proofs which were to be produced, the court determined that the issue of ratio be tried first and a decision rendered before the trial on the issue of valuation. (See 860 Executive Towers v Board of Assessors of County of Nassau, 84 Misc 2d 525, affd 53 AD2d 463.)
Prior to the trial of the issue of ratio for the years in question, 1971 through 1974, petitioner served upon respondents notices to admit pursuant to section 716 of the Real Property Tax Law in which respondents were asked to admit that the percentage of full value at which other property in the taxing unit is assessed was at certain designated percentages. The notices to admit were each denied by respondents.
Subdivision 3 of section 720 of the Real Property Tax Law provides three means of proving inequality: the use of selected parcels; actual sales within the assessing unit that occurred during the year in which the assessment under review was made; and the State equalization rate established for the roll containing the assessment under review.
Since petitioner, in an inequality proceeding, has the burden of proving ratio, it has been held that he has the option of choosing any one of the three methods of proof provided for in subdivision 3 of section 720 of the Real Property Tax Law. Likewise, respondents may utilize whatever method contained in the statute it desires in order to rebut petitioner’s proof. (Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau, 76 Misc 2d 754.)
The petitioner herein has elected to prove ratio through actual sales of real property in the assessing unit for the four years in question. Petitioner’s expert testified that he examined every sales transaction in the tax assessing unit for each of the years in question as those transactions appear in the office of the Clerk. of Westchester County, Division of Land Records, the office of the Assessor of the City of Peekskill, and in the records of the Westchester County Tax Commission. From these transactions, he eliminated those sales which he deemed not to be arm’s length transactions. These omitted sales referred to transactions where there was no consideration, intrafamily and intracorporate sales for patently insufficient consideration, and transactions effected by the Urban Renewal Agency.
The listed transactions, approximately 550 in number, were compiled in lists which set forth the grantor, the grantee, the *907 date of the deed in question, the recording information, the estimated sales price based upon documentary stamps attached and a verification with one of the parties to the transaction by the appraiser and the assessed value of the property as it appeared upon the assessment roll of the respondent. The parties stipulated that the information set forth on the face of the lists as above recited was correct and accurate and the lists were marked into evidence solely for that information to prove sales. The sales listed therefore represent the position of petitioner as to the actual sales of real property which, in the opinion of petitioner’s expert, represented arm’s length transactions and therefore evidence of all the actual sales in the assessing unit for the years in question.
Petitioner served upon respondents a copy of this document before the trial date. In so doing, petitioner sought to comply with the rules of the Appellate Division, Second Department, regarding exchange of appraisals (22 NYCRR 678.1). Petitioner’s action in so doing is supported by a determination of the Appellate Division, Second Department, that the exchange rule requires a filing and exchange of lists of actual sales to be relied upon (Pellaton Apts. v Board of Assessors of County of Nassau, 42 AD2d 847).
At trial, the parties admitted the document into evidence on a stipulation that the transactions listed by petitioner’s expert were arm’s length transactions and represented both the price paid for and the assessment of each parcel. It was further stipulated that upon the application of a correct mathematical approach wherein the total assessments were divided by the total prices paid, the following ratios were obtained:
1971 33.5
1972 28.5
1973 26.5
1974 26.5
Further, although the instant proceeding is unique to the extent that petitioner has produced a study of virtually all of the sales within the taxing unit as disclosed by an examination of the records in the office of the Clerk of Westchester County, Division of Land Records for the years in question, the method of relying on actual sales, albeit a sample thereof, has been utilized before, both successfully and unsuccessfully.
In People ex rel. Hagy v Lewis (280 NY 184, 188 [1939]), ratio was determined by means of the selected parcel method. *908 The referee declined to consider records offered by the city to show actual sales of real property. The court agreed with this decision since the data was fragmentary and in a number of instances, lacked positive authentication. Thus, in the exercise of its discretion, the lower court found the evidence not so proximately relevant so as to be persuasive. However, inherent in the decision is the recognition that a properly prepared sales study would be of value in determining ratio.
However, thereafter in Matter of Borst v Board of Assessors of City of Amsterdam (6 Misc 2d 945 [1957]), the court found that the referee had authority to receive evidence of the actual sales and the assessments thereon as proof of the ratio of assessed value to true value and to utilize the formula set forth in People ex rel. Hagy (supra), a selected parcel case, of adding the sales prices and dividing the total into the total of the assessments to find a ratio. Moreover, it has been indicated that when selected parcels are relied upon, the courts should utilize the method set forth above and not average the ratios found between the assessment and the full value of the individual parcels involved (see Matter of Rochester Sav. Bank v Wagner, 34 AD2d 164, 167).
In Matter of Mid-Island Shopping Plaza v Podeyn (25 Misc 2d 972 [1960], affd 14 AD2d 571, affd 10 NY2d 966), petitioner also elected to rely upon the actual sales method to prove ratio. Petitioner selected 530 sales at random and produced a statistician who had made the random sample. The court noted that the method used permitted the use of a large number of transactions, far greater than could have been obtained under the selected parcel method. It concluded that substantial consideration should be given to the actual sales method when the sales were randomly selected. It noted that the statistician conceded a possible 1.5% error in either direction. This 1.5% was added to the ratio found by the actual sales method and adopted by the court as the ratio to be utilized.
In affirming Mid-Island, the Appellate Division, Second Department, held that a petitioner could rely exclusively on actual sales to prove ratio (14 AD2d 571, supra).
In Matter of Tilsac Corp. v Assessor of Town of Huntington (55 Misc 2d 431 [1967], affd 41 AD2d 604, mot for lv to app den 32 NY2d 611), petitioner also attempted to utilize a sample of actual sales to prove ratio. The court agreed with respondents’ assertion that the sample was not randomly *909 selected and contained numerous errors as to assessments and prices. Thus, petitioner was held not to have established a proper basis to determine a ratio. The point of Tilsac is that, absent a random sample of sales free from error as to assessment and sales price, that method falls prey to the infirmities of the selected parcels method where each side seeks parcels at the two extremes of value to establish its position (see Matter of Wolf v Assessors of Town of Hanover, 308 NY 416). This is to be compared to the case at bar where virtually all sales were included in the sample.
In an extremely recent decision, Matter of Swanz v Brant (52 AD2d 1071), the petitioner elected to rely upon proof of 23 actual sales in the unit in the year in question. The respondent introduced proof of the State rate as set by the State Board of Equalization and Assessment and proof as to five selected parcels.
The trial court relied upon the actual sales exclusively to determine ratio. Respondent argued that its proof of the State rate and its testimony as to selected parcels were entitled to greater probative weight than the actual sales. The Appellate Division, Fourth Department, disagreed. It noted that subdivision 3 of section 720 of the Real Property Tax Law provided three acceptable methods of proving ratio and the State rate was not automatically controlling in all cases. It is for the trial court to determine the weight to be given the proof. The Appellate Division concluded that the record supported the conclusion that actual sales were more reflective of ratio than the State ratio and the selected parcels.
It must be noted that the proof as to the State rate did not reach the degree of proof adduced herein. Rather, the State rate was introduced through the testimony of the town clerk as to the rate received by the town from the State Board of Equalization and Assessment.
From the foregoing, it is clear that a petitioner may rely upon actual sales as a valid method to prove ratio. Further, where as here, virtually all sales are utilized, a claim that the sales selected represented only extremes selected because they favor petitioner’s claim cannot be sustained. Also, while the one objection to the use of actual sales has been that it requires a great expense, such an argument is without merit where, as here, petitioner is willing to meet that expense (Guth Realty v Gingold, 34 NY2d 440, 449, supra; 860 Executive Towers v Board of Assessors, 84 Misc 2d 525, 531, supra).
*910 The court reviewed the underlying methodology used by the State Board of Equalization and Assessment as it was presented by the testimony of Mr. Elby, an expert in systems analysis and a management consultant, and the testimony of Mr. Powers, an expert real estate appraiser, familiar with the personnel and training programs of the State board.
Mr. Elby, in analyzing the techniques of the State board used to determine the State ratios, pointed out its reliance upon surveys for prior years, its classifications of properties in the survey, the 80% rule (85% after 1973) in dealing with the classifications whereby the lowest 20% of the roll was not part of the sample, and the mandatory inclusion in its survey of any unit constituting at least 4% (now 8%) of the total assessment roll in the sample.
He pointed out that prior valuations are used for the appraised value of random samplings which are, in turn, subject to verification by an answering card from the purchaser. He noted the substantial time lag which exists permitting market values to be applied against an assessment roll made from one to three years before to determine the ratio for a particular year, three years after the survey and up to seven years after the date year of the assessment roll used. He further referred to the use of repeat appraisals to determine the ratio for the years in question.
As to the methodology used by petitioner, Mr. Elby, speaking as an expert statistician, criticized the material submitted by the petitioner’s expert since there was no random selection.
Mr. Powers testified in detail as to the personnel and the respective duties and skills accompanied by training in the field of real estate appraisals which, in his opinion, established a high level of appraisals skills in the personnel of the State board.
Based on the foregoing, the court concludes that a sufficient foundation was set forth to permit the introduction of the State rate (860 Executive Towers v Board of Assessors, 53 AD2d 463, 472, supra). However, the degree of weight to be given it is for the trial court. (Matter of 860 Executive Towers v Board of Assessors of County of Nassau, 79 Misc 2d 821, 826, affd 47 AD2d 603; Matter of Swanz v Brant, 52 AD2d 1071, supra.)
Since respondents have relied upon the rate established by the State Board of Equalization and Assessment, the court *911 must discuss the law relating to that rate and its use in an inequality case.
In Guth Realty v Gingold (41 AD2d 479, affd 34 NY2d 440, supra), 860 Executive Towers v Board of Assessors of Nassau County (84 Misc 2d 525, affd 53 AD2d 463, supra), and Matter of Lawrence Investing Co. v Board of Review (86 Misc 2d 642, supra) there are to be found exhaustive discussions of the law relating to the use of the State Board of Equalization and Assessment ratio in inequality proceedings and this court will not restate the law herein.
The court notes that those cases generally hold that a petitioner may rely solely on the State Board of Equalization and Assessment rate for the year 1970 and thereafter to establish ratio. In those cases, petitioner sought to utilize the State rate. At bar, petitioner seeks a lower rate and has sought to prove it by the actual sales method.
The mandate of Guth is that the party seeking to use the State rate will be put to his proof that such use is justified in the case (34 NY2d 440, 450, supra). Further, the party resisting the use of the rate will (p 451): "always be entitled to show that the equalization ratio is inappropriate to the taxing unit, to the category of property involved and to the particular property or any other valid reason which would affect its relevancy or weight”.
Further, the methodology of the State Board of Equalization and Assessment may not be relitigated by the municipality and it may no longer be shown by the municipality that the State rates are subjectively or inexpertly arrived at (860 Executive Towers v Board of Assessors, 53 AD2d 463, 470, supra). However, as noted by Mr. Justice Hopkins, "One could nevertheless hypothesize, however, that the State rate might be inappropriate to prove ratio where the property under review constitutes a relatively large percentage of the taxing unit’s total assessed valuation” (53 AD2d 463, 471, supra).
Based on the foregoing, it is petitioner’s view that the State ratio may not be used since it is not justified in this case as to this property and is inappropriate under the facts.
Simply stated, it is petitioner’s claim that since its property constitutes 6.83% to 8.07% of the total assessment roll of the respondent city and is included in the State’s sample for the years in question, the State rate cannot be accurate.
Further, petitioner urges that since petitioner has relied on *912 all of the sales as listed for each year in the taxing unit totaling approximately 550 transactions overall and the three State samples include but 251 parcels through appraisal or sales, the claim that the State rate is preferable to sample parcels or actual sales because it includes a larger sample, is not factually supportable (cf. Guth Realty v Gingold, 34 NY2d 440, 450), particularly since the degree of weight to be given the State rate is for the trial court to determine (860 Executive Towers v Board of Assessors, 79 Misc 2d 821, 826, affd 47 AD2d 603, supra).
Further, where, as here, the subject is a large part of the State sample, as distinguished from the assessment roll, the State rate may well be suspect.
Respondents’ argument in its ultimate rationalization urges that the three statutory methods of establishing ratio (Real Property Tax Law, § 720, subd 3), through the judicial interpretations in 860 Executive Towers and Guth, are now reduced to one, the State rate, since statistically and methodologically, as opposed to the other two, it must be the best evidence of ratio. The court does not accept that conclusion.
The court must determine, based on the evidence, which of the two theories of ratio advanced by the parties, best reflects the true ratio in the respondent taxing unit in each of the years in question.
The court therefore, is faced with the question as to whether or not it should rely upon the actual sales study of petitioner or upon the State board’s equalization rate advanced by respondent. Clearly, both methods are permitted by subdivision 3 of section 720 of the Real Property Tax Law and the statute does not state that one method is preferable to the other.
The 860 case and the Guth case, both of which gave court approval to the State rate and the methodology used to derive the rate, involved an attack on the State rate by the municipality. In both cases, the selected parcel method authorized by the statute was discredited. In each case, the court noted that the selected parcels method led to the selection of parcels at the opposite ends of the spectrum of values, involving great expense in proof. Therefore, as between the selected parcel method and the State rate, at least for the years after 1969, the State rate was preferable. (Guth Realty v Gingold, 34 NY2d 440, 449-451, supra; 860 Executive Towers v Board of Assessors, 53 AD2d 463, 468, supra.) Further, while in Guth *913 the parties also relied on actual sales, those sales were artfully selected by each side so as to reflect opposite ends of the spectrum of values.
The court is also mindful of the fact that the Guth case holds that despite all the criticism of the State rate including the 80% class sample rule, the two-thirds rule, as to the use of appraisals previously made, the use of actual sales, the time lag, the use of multiple surveys and the classifications of property, the State rate is objectively and expertly arrived at. However, the courts in Guth and in 860 did not say that the equalization rate is the only method which may be used to prove ratio. Clearly, the selected parcel method and an improper actual sales method were discredited. However, the actual sales method itself was not attacked and no consideration was given to a situation where, as here, all sales in the taxing unit were considered by petitioner.
860 does say that the State rate may not be attacked by the municipality on the ground that it is subjectively and inexpertly arrived at. It does not so preclude a petitioner. While there are avenues of administrative review available to a municipality dissatisfied with the rate set by the State Board of Equalization and Assessment, those avenues are not open to a petitioner. Thus, Judge Hopkins indicates a municipality may be collaterally estopped (860 Executive Towers, 53 AD2d 463, 474, supra). The decision does not extend this prohibition to a petitioner. Therefore, to the extent that petitioner’s cross-examination herein attempted to indicate serious questions as to the State methodology based on the 80% rule, the two-thirds rule, the time lag involved, as well as the use of classification of property, that testimony was considered on the issue of the propriety of the State Board of Equalization and Assessment’s methodology, as well as on the degree of weight to be given the respective methods used herein.
The cross-examination of respondents’ witnesses as to the techniques of the State Board of Equalization and Assessment in determining ratio was received in evidence without objection.
In the case at bar, the court may consider the criticism of the State Board of Equalization and Assessment methods to determine whether an actual sales survey is more appropriate to a certain year, a certain municipality and a certain parcel. Under such circumstances, the court will be viewing metho *914 dology on the issue of any defects inherent therein as well as on the question of whether or not another method more accurately reflects the ratio under all the facts and circumstances.
It could be argued that both 860 and Guth preclude any party from mounting an attack on the methodology of the State Board of Equalization and Assessment. However, in view of the reservations of Judge Bergan, expressed in Matter of O’Brien v Assessor of Town of Mamaroneck (20 NY2d 587, 596), and the limitations imposed by 860 solely on the municipality, the court is convinced that as a general rule, it is the municipality which is barred from attack on the State Board of Equalization and Assessment’s methodology on the ground that the State ratio is not objectively arrived at. A petitioner is not bound by such restrictions.
Further, the use of the State rate may be inappropriate where the property under review constitutes a large percentage of the taxing unit’s total assessed valuation.
Standard Brands constitutes 6.83% of the total assessment roll in 1971, 1972, 1973 and 8.07% in 1974. Thus, it forms a substantial portion of the assessment roll involved. In analyzing the three samples used by the State, the assessment of Standard Brands constitutes from 44% to 66% of the total assessments of the properties included in the sample.
It is interesting to note that while the State appraisers have appraised the property of petitioner at approximately $4,400,-000 in the three surveys used (as of January 1, 1968, January 1, 1970 and January 1, 1973), respondents herein appraised the property at approximately $20,000,000. Further, since the 1973 State survey is made for the 1974 survey date, the respondents rely on a fair market value of $4,400,000 on the issue of ratio, yet abandon that figure and go to $20,000,000 on the issue of value for the same year, 1973. It is patent that the use of the latter figure in the State computations would distort and skew the resulting State rate to a massive extent.
In dealing with the issue of the appropriateness of the State rate as applied to Standard Brands, the court is led to the conclusion that the subject forms a relatively large percentage of the taxing unit’s total assessed valuation and, thus, the State rate is suspect as hypothesized by Justice Hopkins in 860. Further, in view of the tremendous differences between the values found by the State and the respondent herein, the State rate based on a fair market value of $4,400,000 com *915 pared to respondent’s claim of a fair market value of approximately $20,000,000 must be suspect. Clearly, were the $20,000,000 substituted in the three surveys, the State rate would be reduced by about nine points
Thus, the court finds that the exceptions set forth in Guth and 860 must be given great consideration when viewing the ratio achieved under the actual sales method used by petitioner. The basic criticism of the actual sales method is that it is not based on a random sample. Here, although it includes all sales which constitute arm’s length transactions, it is argued the class is preselected.
However, as demonstrated by Mr. Elby, the number of randomly selected parcels appraised in the State survey is of minor effect when compared to the number of sales used by the State which have no random basis. Yet, the State rate may not be rejected for lack of randomness.
Respondent also alleges that the sales method does not utilize classifications of property as does the State rate. The answer is found in Matter of 860 Executive Towers. It is illegal to assess at different rates for different classes (860 Executive Towers v Board of Assessors, 53 AD2d 463, 471, supra; see Matter of Hellerstein v Assessor of Town of Islip, 37 NY2d 1).
Further, the size of the sample used by petitioner is more than double that used by the State Board of Equalization and Assessment. The sales are closer in time to the years in question than those used by the State board and all classes of property are represented so long as they are sold, unlike the State’s 80% (now 85%) limitation on use of classification. Also, here, the sales survey finds the ratio at which other parcels in the district are assessed (Real Property Tax Law, §§ 706, 716) unlike the State rate which here includes the subject parcel.
In view of the above, it is the conclusion of this court that since the statute — subdivision 3 of section 720 of the Real Property Tax Law permits the use of actual sales or the State rate, either method may be relied upon by petitioner. Where, as here, the sales sample includes all the arm’s length sales in the taxing unit for each of the years in question, and the State rate is suspect because it includes the subject property which is a large part of the assessment roll and where the values attributed to the subject property by the State and respondent are so drastically different, the actual sales survey is a better means of testing ratio. Without questioning that *916 the State Board of Equalization and Assessment’s rate is basically objectively arrived at, the court finds that under the circumstances herein, a valid actual sales survey is the best indication of ratio.
Accordingly, the court finds the ratio to be as follows:
1971 - 33.5%
1972 - 28.5%
1973 - 26.5%
1974 - 26.5%