OPINION OF THE COURT
John F. Lawton, J.
There remains but one further determination to be made in the above-entitled certiorari actions before a final money judgment may be entered. Previous determinations have been made with respect to the value of the individual properties for the years in question, and this court, by order entered on the 28th day of December 1984, fixed the applicable equalization rates to be applied to said values for those years agreement *451 could not be reached. No appeal having been taken by either of the parties, said order is now final.
Petitioners now make application to this court for an award of expenses, including reasonable attorney fees, for proving an equalization rate less than that contained in their demand served pursuant to Real Property Tax Law § 716.
The following are the demands and the percentages found for the years in question.
Year Demand Found
1976 35.27 35.5
1977 34.04 34.0
1979 27.80 28.0
1980 25.34 26.0
1981 22.95 24.5
1982 22.93 25.0
In all cases petitioners’ demand was identical with the equalization rate established by the State Board of Equalization and Assessment (SBEA). The city, on the other hand, consistent with its long-standing dispute with the State Board’s determinations, refused to admit to the State Board’s rate. This court, in its findings for each of the years at issue, found an equalization rate above the State Board’s rate for every year but one, viz., 1977. Consequently, both parties are in agreement that under section 716, the only year an award for reasonable costs and expenses may be made is the year 1977.
Real Property Tax Law § 716 reads as follows:
"§ 716. Admission of percentage of full value at which real property is assessed
"1. Except in a proceeding to review a special franchise assessment, at any time after answer has been served or has been deemed made and not later than twenty days before the trial, the petitioner may serve upon the respondent a demand for admission for the purposes of such proceeding that the percentage of full value at which other real property is assessed in the unit is a percentage specified in such demand, but not in excess of ninety-five per centum. Unless the respondent within fifteen days after service of such demand, or within such further time as the court may allow on motion on notice, serves and files a notice specifically denying that the percentage specified in such demand is correct, such percentage shall be deemed admitted.
*452 "2. After being served with such demand, if the respondent serves such a notice of denial, and the petitioner thereafter proves that the percentage of full value at which other real property is assessed in the assessing unit is not in excess of the percentage specified in his demand, he may apply to the court at or immediately following the trial for an order requiring the respondent to pay him the reasonable expenses incurred in making such proof including the reasonable fees of experts and attorneys. Unless the court finds that there was good and sufficient reason for the respondent’s denial, the order shall be made irrespective of the results of the proceeding.”
The wording of section 716 makes quite clear that the challenging taxpayer controls the time when a demand to admit is to be served. The taxing authority has to specifically deny the demand within 15 days thereafter, or said fact will be deemed admitted. Contrary to contentions of petitioners made during oral argument, respondent is not under a continuing obligation to renew its denial in light of subsequent events.[1] Subdivision (2) sets forth the penalty to be assessed against the municipality for its failure to admit to a rate that is found to be equal to or less than that demanded. Such penalty, however, is not automatic and is only to be awarded if the court finds that there were insufficient reasons existing for the denial.
Petitioner, having the right to time his or her demand, must in fairness be bound by the facts then existing. Therefore, while not expressly stated, implied within section 716 is the proposition that the reasonableness of the denial must be determined as of the time the denial is made. Therefore, the first inquiry to be made on this application is to determine when the demand was made for each of the properties for the year 1977, and thereafter determine the facts as they existed at the time service was made. According to petitioners’ moving affidavit, demands for the year 1977 were served at various times for different properties throughout the year 1981, commencing on February 4 and ending December 22.
Except for in but three instances, each time a petitioner served a demand that the city admit to the SBEA rate, the law was such that the SBEA rate was statutorily not admissi *453 ble.[2] As to the three properties where a petitioner’s demand followed the statutory amendment permitting limited use of the State Board’s rate, it did so by but 20 days.[3] Also, at the time that petitioners’ demands to admit to the State Board’s rate were served upon it, the respondent was in court asking for a declaratory judgment that the 1979 amendment to Real Property Tax Law § 720 (3) precluding evidence of the SBEA rate in certiorari actions was constitutional. During this period the constitutionality of said section was also being actively prosecuted by others in the courts (see, Matter of Slewett & Farber v Board of Assessors, 80 AD2d 186 [2d Dept 1981], mod 54 NY2d 547 [1982]). In said action the Appellate Division held the exclusion rule to be constitutional, but that the statute was again amended to permit the SBEA rate to be once more considered in certain areas of the State.
Following the trial brought to determine the correct equalization rate, this court found the equalization rate for the year 1977 to be but .04% less than the rate demanded by petitioners and found by the SBEA. Petitioners would have this court award costs and expenses to them totaling $173,698.08 by reason of said fact. Section 716 should not be interpreted so as to require such a finding. Determining equalization rates is not a matter of exact science and they certainly are not readily ascertainable, as demonstrated by the costly and protracted trial held to establish such rates. The city cannot be expected to know with precision just what the actual rate is or what it may later be found to be by a court of competent jurisdiction. While the courts have held that section 716 is not an unconstitutional attempt to underwrite or guarantee private litigation at public expense,[4] there is nothing about its wording that it was intended to be punitive in cases of reasonable disagreement. Quite the contrary, the statute expressly precludes the making of such an award in cases where *454 "good and sufficient reason[s]” exist for such denial. On the other hand, section 716 should not be permitted to be used by municipalities as a sword to preclude or deter taxpayers from commencing certiorari actions.
Experience shows that proving an equalization rate may be very expensive and that said fact should not be used by a municipality to deter a citizen from challenging his or her taxes by arbitrarily refusing to admit to a reasonable demand to admit. Where such arbitrariness is shown to exist, the courts should not hesitate to employ the sanctions imposed on a municipality by section 716 and grant full reimbursement to a petitioner for costs incurred in proving a rate equal to or less than that demanded. Likewise, a court should not hesitate, even absent a finding of bad faith or arbitrariness, to employ said sanctions where there is a meaningful difference between the amount demanded and that ultimately found by the court.
Such are not the facts established in this case, however. The petitioners in their demand relied exclusively upon the State Board’s rate and elected to stand or fall on this figure even though the law was such that said rate was not then admissible into evidence. No allowance for possible error by the SBEA in arriving at said rate was admitted to by petitioners. At trial, the SBEA rates were found to be incorrect in all years except 1977, when this court found the rate to be .04% lower than the SBEA rate, occasioned by the fact that for this year only, the respondent’s own all sales method produced a rate lower than that of the SBEA rate. There is no proof that the city was aware of said fact back in 1981 when the demands were served upon it. Quite the contrary, it was not until the year 1981 that the respondent commissioned its experts to commence an all sales survey for its administrative challenge of the SBEA rate. One may question why in light of the results ultimately obtained by the sales survey for the year 1977 the respondent did not stipulate to the State Board rate prior to the time of trial, as it did for the year 1978, but that is of no moment in arriving at a decision on this question, which, as previously stated, must be determined on the facts existing at the time the demand was made. There is no evidence of bad faith or arbitrariness shown on the part of the respondent in this instance. As set forth in petitioners’ attorney’s moving affidavit, the respondent had, up to the time that petitioners made their demands to admit, entered into agreements with other contesting taxpayers, whereby the respon *455 dent stipulated to an equalization rate slightly in excess of the SBEA rate, thereby avoiding the necessity of a trial on said issue. Petitioners, however, believing that the SBEA rate was the only true rate, no longer would enter into such a stipulation, and thereafter served the demands which are the subject of this application.[5] Therefore, it was the uncompromising attitude of the petitioners in part that forced the trial of this issue, which necessitated the spending of considerable sums of money by each of the parties.
As previously pointed out, the equalization rate found to be the correct rate for the year 1977 was but .04% lower than that of the rate demanded. Such difference can hardly be said to be meaningful.
The finding of this court, therefore, is that sufficient reason existed at the time demand was made upon respondent to refuse to admit to a rate equal to the equalization rate found by the SBEA and, therefore, petitioners’ motion for reimbursement pursuant to Real Property Tax Law § 716 must be denied in its entirety.

. Of course, during the course of the litigation the parties are free to stipulate to an agreed equalization rate free of any effect of section 716, as was done in this case for the year 1978.

. The admissibility of the SBEA findings in certiorari actions has had a turbulent history. At first it was considered by the courts not to have any credibility at all. As technology improved, the courts started to give it recognition. The Legislature thereafter finally authorized its use, only to later reverse its position and again bar its use entirely. Currently, evidence of the State Board rate is admissible in all areas of the State, except New York City and Nassau County. (See, Guth Realty v Gingold, 34 NY2d 440 [1974]; Matter of Slewett & Farber v Board of Assessors, 80 AD2d 186 [2d Dept 1981], mod 54 NY2d 547 [1982], for a history of said legislation.)

. See, L 1981, ch 1057, eff Dec. 3, 1981.

. 860 Executive Towers v Board of Assessors, 84 Misc 2d 525 (1975), affd 53 AD2d 463 (2d Dept 1976).

. Petitioners’ thinking in this regard no doubt was prompted by the belief that a court, when called upon to determine an equalization rate, would choose a rate obtained under one or the other of the permitted methods for determining said rate and not make a finding in between. Such thinking was founded no doubt on language contained in several cases wherein a court did just that (see, e.g., Matter of Swanz v Brant, 52 AD2d 1071 [4th Dept 1976]; Matter of Standard Brands v Walsh, 92 Misc 2d 903, affd 60 AD2d 605 [1977]; Matter of Stemmer v Town of Pompey, Sup Ct, Onondaga County, Feb. 29, 1984, Stone, J.). For the reasons set forth in this court’s earlier opinion, the better procedure I believe is to weigh the various methods, but not to exclude any one of the permitted methods unless shown to be without any credibility.