Bergan, J.
In this consolidated proceeding by petitioners pursuant to article 7 of the Real Property Tax Law to review real estate tax assessments in the Town of Mamaroneck and the Village of Larchmont, two separate questions arise: (a) whether the stipulations by the tax districts in the record as to the State rates of equalization were admissions merely of the actual fact as to the rates without admitting their effect; or whether the stipulations embraced the effect of the rates on the question of inequality; and (b) whether, if the fact and not the effect of the State equalization rates has been stipulated, this alone will sustain automatic application of the rates by the court to the assessments without further proof. The question of overassessment is also in the case. The Appellate Division, reversing the Special Term, found that the stipulation between the parties “ fixed the equalization ratios ” and also found the assessments were excessive.
*590 Both the town and the village argue in this court that in the stipulations and admissions made at the trial all they “ intended to do and did do (as the record shows), is to admit what the state ratios happened to be for the years involved ’
This statement is not met frontally by the petitioners who argue in support of their “proof as to inequality” that they have established this “ by three methods, to wit, the Notices to Admit, the introduction of the prevailing equalization rate into evidence, and the stipulation ’
Although they have not been furnished as part of the record in this court, it seems not to be disputed that notices to admit the ratios of equalization for the years 1961 and 1962 were served by petitioners pursuant to section 716 of the Beal Property Tax Law and no 11 notice of denial ’ ’ authorized by this section was served by the two tax districts. Hence, the ‘ ‘ percentage of full value ’ ’ at which 1 ‘ other real property ’ ’ was assessed is deemed admitted for the years 1961-1962. But these consolidated proceedings also embrace other years, 1963 and 1964 for the village, and 1963 for the town, and no notices to admit were served by petitioners for these years. Thus, it became necessary for petitioners, if they were to include all the years in issue, to broaden out the record on the issue of inequality.
They argue in this court a second method of showing inequality was followed ‘ ‘ by introduction of the equalization rate pursuant to the amendment of Section 720, Real Property Tax Law ’ ’. The record does not show the ‘ ‘ introduction ’ ’ of evidence as to any rate, and actual conformity with section 720, the scope of which will be more fully discussed, depends on the nature of the stipulations of the two tax districts. This, in turn, leads to a consideration of the third ground upon which petitioners rest, “the oft used lawyer’s technique of stipulation ”. In connection with this petitioners seem to argue within the language of Matter of Wolf v. Assessors of Town of Hanover (308 N. Y. 416, 419-420) that the “mode of trial” and the “parties’ acquiescence” spelled out a concession by the districts of the effect of the State rates on the issue of inequality.
On the record, as developed, the tax districts argue that “ In the minds of petitioners’ attorneys ” and also of the Appellate Division there has been “ confusion” as to the effect of *591 what was agreed upon by the parties before the court. To follow this through it is needful to examine closely what was said by counsel.
At the opening hearing before the Referee there was made a part of the record what appears to have been a written stipulation between the parties, since there is no statement by any counsel of what it contained. It set forth that “ for the purpose of this hearing” the village and the town “admit that the equalization rate applying ’ ’ in the two tax districts for 1961 and 1962 is 52%.
At the next hearing, the attorney for the petitioners stated on the record that it was stipulated ‘ ‘ for the purpose of this hearing ” that the village and town “ admit ” that the “ equalization rate as set by the State of New York for the years in question will be admitted [sic], and no proof will be necessary to establish those rates ’ ’. The ‘c years involved ’ ’ were stated to be 1961, 1962, 1963 and 1964. The equalization rates for those years ‘ ‘ will be supplied at the conclusion of this hearing ’ ’.
When the attorney for the petitioners had completed this statement the village attorney made a specific reservation about what was being stipulated. He said that the stipulation was made “ only in respect to what that rate is”. He continued more specifically: “We do not, in other words, agree that the mere fact that the state has fixed an equalization rate means that it can be applied automatically to any valuation that may be arrived at in this case, not as evidence.”
The attorney for the petitioners noted that if the equalization rate was not admitted “ then we’ll have to be put to that proof”. To this statement the attorney for the village again stated expressly: “ I’ll not agree that it be accepted.”
The attorney for the petitioners then stated that as to the year 1961, the village had no choice, 1 ‘ You have admitted it ’ ’. The attorney for the village said “ That’s right ”, but he then told the Referee, quoting section 716 of the Real Property Tax Law, that as to the years other than 1961 and 1962 no demand had been made and there had been no such admission.
Petitioners’ attorney then returned to a reliance on the original stipulation. He said: “As the minutes will indicate, at our last meeting the rates were stipulated to by Mr. Forbes [the attorney for the village]. It has been read into this rec *592 ord ’ But, as it has been noted, that stipulation expressly related to what the equalization rate was and did not relate to its legal effect in the proceeding.
There was some further discussion as to what the rates actually were for the two years and the village attorney stated: “ I couldn’t stipulate as to anything where the Village is concerned which is contrary to law, in my opinion”. Following discussion, some of it off the record, the attorney for the petitioners again stated that ‘ ‘ there is no question on the record the equalization rate for the two prior years has been stipulated to at the prior organization meeting ’ ’, and the attorney for the village replied, “ Yes, that’s conceded ”.
Addressing himself then to the attorney for the town, the attorney for the petitioners asked whether the “ equalization rate as set by the state ’ ’ is admitted by the town ‘ ‘ for the purpose of this proceeding”. The town attorney answered “ For the years 1961 and 1962 ”. Discussion was apparently then addressed to the original stipulation and the attorney for the town said “ I’ll withdraw my objection ”, this, as far as one can tell, being an objection as to the inclusion of additional years. Then the attorney for the petitioners asked the attorney for the town “you’ll stipulate the state rate? ”. To which the town attorney answered ‘ ‘ Right ’ ’.
Petitioners’ counsel thereupon asked the question whether “ the equalization rate is no longer part of this trial? ”. The Referee answered this by saying ‘ ‘ For 1961 and 1962 ’ ’, to which the attorney for the petitioners responded that it included 1963 and 1964 “ as far as they [the village and town] are concerned. They both now admit they accept the state rate
The attorney for the village here again entered the discussion. He was very specific as to what he admitted. It is clear that he was admitting a fact as to the rates and not their effect in the proceeding. He said: “All right. We have just admitted those are the rates the state fixed. ’ ’
The attorney for the petitioners persisted that he wanted it ‘1 specifically stated ’ ’ that as far as the ‘ ‘ equalization rate ’ ’ is concerned, it has been established ‘1 unequivocally ’ ’. The attorney for the village again noted his reservation. He said: “ As to percentage. That’s all I care about.”
*593 Up to this point, reading the original stipulation and the long, fencing discussion between counsel as to what was and what was not agreed upon, it must be manifest that neither the town nor the village was accepting more than the simple fact of what the State rates of equalization were for the four years under discussion.
There followed a statement by the attorney for the petitioners which was somewhat different from anything that anyone had been talking about before except what had been said about cost and admission factors under section 716. He said: “In other words, if I was put to the proof and produced several parcels that would be the rate that would be effective as of this proceeding.” The attorney for the town said “Right”. Nothing in the record contains or implies any acceptance of this statement by the attorney for the village.
It would be markedly unfair both to the village and its counsel, in view of his explicit and frequently iterated statements that he was agreeing only to the fact of the State equalization rates and in the absence of any express acceptance of what the attorney for the petitioners had said, to impose on the village the consequence of a finding of inequality as to these assessments unless it be held by the court that a finding of inequality in an assessment litigation can be based alone on the State rate of equalization.
And it would be almost equally unfair to impose such a consequence on the town because the town attorney had said ‘ ‘ Right ’ ’ to the final statement made by the attorney for petitioners. A judicial admission by a public taxing authority that an assessment was characterized by inequality is a rather extraordinary kind of an admission and a record which purports to rest on it ought to have spelled out fairly just what has been conceded.
The statute lays down very full procedures to try out the “ issue of whether an assessment is unequal” (Real Property Tax Law, § 720). The original stipulation and the long and disputatious discussion among counsel as to what was being conceded cannot be read in full text without a sense that both tax districts deemed themselves conceding the fact and not the legal consequence of the State equalization rates.
*594 For example, the attorney for the petitioners had asked the town attorney whether he stipulated for the town ‘1 the state rate ’ ’, to which the answer was ‘ ‘ Right ’ ’ and all through the previous discussion, beginning with the written stipulation, the parties were addressing themselves to the proof of rates; e.g., “ and no proof will be necessary to establish those rates
In dealing with an admission which in one sense may merely avoid the need for proof; and in another will result in a consequence which the proof may or may not sustain, a court should be careful to see that the parties intend to take the broader consequence before it is imposed on a basis of stipulation alone.
And even if one accords full acceptance by the town of the words which petitioners suggested, the offer in the final statement of the petitioners’ counsel is technically insufficient to support the consequence attributed to them. Counsel notes that if lie “ was put to the proof and offered several parcels ” that “ would be the rate [sic] that would be effective as of this proceeding ”. Petitioners were not in a position to offer proof of “ several parcels ” for the reason they had failed to conform with the procedural conditions of section 720 as to the preselection of parcels and witnesses on the “ issue of whether an assessment is unequal ” and in any event the expression “ and produced several parcels that would be the rate ” seems itself literally meaningless.
The consequence to the public taxing authorities urged by petitioners flowing from this sort of loose and inexplicit language and in this general context of discussion ought not be imposed. The joint statement by the town and village in this court that all they intended to admit and all they did admit was “ what the state ratios happened to be ” seems justified.
We construe the stipulation, then, to be an admission of fact as to the State rates of equalization and not a concession of their legal consequence on these assessments. And, whatever the original effect of the notices to admit for 1961 and 1962 under section 716 might have been, it seems clear that in order to get the benefit of the stipidation of fact as to the years for which no notices to admit were served, respondents relied for all the years on the stipulations of fact.
We turn, then, from this involved problem arising from the stipulations which, in view of the Appellate Division’s reading *595 of what was dono, seems to require extended comment, to the important question of law in the ease, i.e., what is the legal result of proof of the State equalization rate in a local tax district if this and nothing more is shown on ‘1 the issue of whether an assessment is unequal ’ ’ under section 720.
We conclude that although proof of the State rate of equalization is competent when the other conditions of subdivision 3 of section 720, as amended by chapter 942 of the Laws of 1961, are met, such proof standing alone is insufficient to sustain the finding of inequality in a particular assessment.
In People ex rel. Yaras v. Kinnaw (303 N. Y. 224) it was held squarely on the issue of inequality that State and county equalization rates “ were entitled to no weight at all ” (p. 228). The court also held them inadmissible under the statute then effective (former Tax Law, § 293).
The State equalization rate has now been made admissible by amendment to the statute but under closely prescribed procedural standards (Real Property Tax Law, § 720, subd. 3, as amd. by L. 1961, ch. 942). The statutory precondition to admissibility is that the parties shall agree on the parcels to be appraised and the number of witnesses to be heard on inequality and proof on that issue “shall be limited ” to those parcels and those witnesses. There are two exceptions to those limitations of proof: (a) actual sales during the year in issue; (b) the State equalization rate for the assessment roll in issue.
The amended statute does not eliminate, but rather continues, the requirement for the selection of parcels and witnesses to prove inequality. It merely authorizes introduction of additional evidence. The succeeding and concluding sentence in the section deals with the basic conditions related to the selected parcels and witnesses. It is manifest that the amended section does not authorize proof of the State equalization rate directly and independently of the other procedural requirements.
The need for procedural conformity with the requirements of the predecessor statute (former Tax Law, § 293) as to selection of test parcels and witnesses, provisions continued unchanged in the present statute, was fully explored in Matter of Wolf v. Assessors of Town of Hanover (308 N. Y. 416, 422, 423, supra). It was there noted that the selection of sample parcels and their evaluation under the statutory formula *596 ‘ ‘ constitute the sum and substance of an inequality trial ’ ’ (p. 423).
But even where it is admissible in compliance with the preconditions stated in subdivision 3 of section 720, its value must have a guarded acceptance. Inequality of a given assessment ought not be found on the basis of the equalization rate alone, for all the basic difficulties in relating the State rate to actual assessment litigation between the owner and land assessors considered in Yaras and other cases remain. It may no longer be said to be “ entitled to no weight at all ” (Yaras, p. 228) but it is entitled to little weight. It should not, in any event, be applied automatically to sustain a claim of inequality.
In a decision after the amendment of 1961, the court in Bucho Holding Co. v. Temporary State Housing Rent Comm. (11 N Y 2d 469 [1962]), a rent control case, again noted that the State equalization rate “ does not purport to measure the ratio of assessed valuation to full value of any individual property ” (p. 472, n. 2).
One difficulty with an uncritical judicial acceptance of an equalization rate is that it is arrived at as an administration decision by the State Board of Equalization and Assessment (Real Property Tax Law, § 202, subd. 1, par. [b]), which is not judicially reviewable at all by the taxpayer and which is reviewable by the tax district under the limitations of article 78 of the CPLB, i.e., whether sustained by substantial evidence before the board (Real Property Tax Law, § 760).
One party could thus find himself bound by an administrative determination in which he had not participated and which he could not review; and the other by a determination where the review was markedly narrower in scope than the plenary factual inquiry available in the trial of the tax review proceeding itself.
Cases may well arise where the State rate could be applied against the interests of a protesting taxpayer, as where he argues that inequality as affecting his property was greater than the State rates indicate. The State equalization rates not only serve an entirely different function from litigated inequality in a controversy between a property owner and a tax district — a function largely related to apportioning distribution of State payments to local governments — but they are arrived at by processes quite foreign to those employed in judicial deter *597 minations, e.g., the State Board of Equalization' may, in establishing rates, “ avail itself of all information appearing in its office ” (Real Property Tax Law, § 1202, subd. 2).
In the weight to be attached to the State rates, therefore, much of the basic criticism of the value and significance of the rates made by Judge Fuld in Yaras and Wolf retains validity notwithstanding the 1961 amendment. The rates may have little relationship to the actual equality or inequality in a district (cf. Yaras, p. 231), and the procedural method prescribed by subdivision 3 of section 720 to establish inequality continues to be an essential approach.
Lee and Le Forestier in Review and Reduction of Real Property Assessments (Supp., p. 13) conclude on the effect of the 1961 amendment that “ [i]f the inequality issue is to be litigated, the sample parcel rubric is to be followed with the other permitted as adjunct proof ”. We conclude, then, there is not sufficient proof here to sustain the Appellate Division’s finding of inequality.
Nor does the record sustain the view of the Appellate Division that the assessments were excessive. Although the ultimate assessments directed to be made by the Appellate Division and by the Referee differ a little from year to year and from town to village, if a single assessment is carried through the process of adjudication, it will sufficiently illustrate what was done with the others.
For this purpose the town assessment for 1963 will be used. The assessment was $105,500. The Referee found the full value of the property to be $140,000. To this full value he applied a “ previously stipulated” equalization rate of 49% (i.e., the State rate for that year) to find that the assessment should be $68,600, and his decision was to reduce the assessment from $105,500 to $68,600.
This, of course, was based on an express finding that the assessment was not excessive, but well below the true value of $140,000. The reduction was predicated, then, solely on a finding of inequality.
Although the Referee’s report was rejected at Special Term, this seems to have been done on the basis of a rejection of the equalization rate as a “ conversion table ”, since, even if the value of $160,000 attributed to the property by the town’s expert *598 witness be accepted, as the Special Term seemed also to have done, this would not sustain the assessment of $105,500 if a 49% equalization rate were to be applied to it.
The Appellate Division, although finding the assessment “ excessive ”, reinstated exactly the Referee’s finding that the assessment should be $68,600. But this could have been predicated only on a finding of true value to be $140,000, well above the assessment, and applying to it the State rate of 49% to reach $68,600. Thus, there seems no other basis than this for the Appellate Division’s conclusion. There are some other small variations between the Appellate Division’s results and those reached by the Referee which seem unexplained in the record; but it is manifest the result was reached for all the years by an application of the equalization rates.
The order should be reversed, with costs to appellants, and the judgment entered at Special Term confirming the assessments reinstated.