OPINION OF THE COURT
Timothy J. Sullivan, J.
These are consolidated proceedings to review the 1974 through 1978 assessments on real property pursuant to article 7 of the Real Property Tax Law.
The property is known as Town 'N Country Condominiums and is located at Thiells-Mount Ivy Road in the Town of Haverstraw. The subject property is improved with 39 buildings containing 390 single-family condominium dwelling units, and there is a separate recreation building containing facilities for the use of the condominium owners. The recreation building is situated on a separate tax lot which is not under review in these proceedings. Each apartment unit is separately assessed and listed on the Town Tax Map as Map 55, Block 1, Lots 11 through 400. Not all lots or units are involved in all of the years under review.
The petitioners’ protests and petitions with respect to each *925 year are based on claimed overvaluation, illegality and inequality.
Two expert real estate appraisers testified before the court. On behalf of the petitioners, David J. Stemper testified that he found the following to be the total fair market values for the years under review:
ASSESSMENT YEAR
1974
1975
1976
1977
1978
TOTAL FAIR MARKET VALUE ALL UNITS
$2,590,000
$5,890,000
$6,090,000
$6,275,000
$6,275,000
On behalf of the respondents, Corneilius P. Mahon testified that the fair market values were:
ASSESSMENT YEAR
1974
1975
1976
1977
1978
TOTAL FAIR MARKET VALUE ALL UNITS
$12,570,010
$12,643,780
$12,505,370
$12,505,370
$12,779,875
The proof on the issue of inequality was presented to the court in a peripatetic manner, and in the court’s view, petitioners failed to prove inequality.
Petitioners’ counsel first called the respondents’ real estate expert and questioned him about the ratios he utilized in arriving at equalized tax rates in his income capitalization approach to value. He testified that he used "State” rates as "set by the State of New York Board of Equalization” and that he thought such numbers as he utilized and testified to were "appropriate”. Upon cross-examination he admitted that he had made no independent studies to determine whether the "State rate” was "accurate and represented the correct ratio of values of full market values, of property as compared to the assessments”; that he just accepted the information he got from the State board; that he had no information that the rates he used "actually reflect some correlation between the assessment on a particular piece of property and its full market value”; and that he had no opinion as to the "accuracy or correctness” of the rates.
*926 Petitioners then introduced into evidence (Exhibits 1-7) demands to admit ratio. The demands are all dated November 28, 1978 and are identical except for the ratios set forth and the index numbers contained next to the caption. No reference is made anywhere in the demands to the year for which each is applicable, although by reference to the County Clerk’s files this information is before the court. Denials were served by the respondents (Exhibits 8-14 in evidence), and the denials are identical in form, the adequacy of which are challenged by petitioners’ motion alleging they do not comply with the requirements of section 716 of the Real Property Tax Law.
The responses being challenged each read as follows: "Respondent Town of Haverstraw, responding to petitioner’s Demand dated November 28, 1978, respectfully states that it does not understand the language set forth in said Demand or comprehend its meaning or intent, or is not required to speculate on the intent of the petitioner herein in setting forth said Demand and must therefore respectfully deny said Demand.”
The applicable portion of the aforesaid statute provides as follows: "Unless the respondent within fifteen days after service of such demand, or within such further time as the court may allow on motion on notice, serves and files a notice specifically denying that the percentage specified in such demand is correct, such percentage shall be deemed admitted.”
Notwithstanding the excess verbiage in the respondents’ denials of ratio, and regardless of the reasons for the denial, it is obvious that petitioners’ Exhibits 8 through 14 clearly and explicitly denied the alleged ratios as set forth in the petitioners’ demands, and the court so rules.
Next, petitioners introduced into evidence as Exhibits 15 through 23, notices to admit truth of fact and a further document marked petitioners’ Exhibit 24 in evidence which was respondents’ response thereto. The court granted petitioners’ motion for a ruling that Exhibits 15 through 21 be deemed admitted because no response was served by respondents with respect to those notices, and reserved decision on petitioners’ further motion to declare respondents’ one response to the notice to admit for the 1978 proceedings a nullity because allegedly not in conformity with CPLR 3123 (subd [a]) which requires service of a sworn statement.
The court having reserved on this motion now grants it and *927 finds Exhibit 24 in evidence to be a nullity since it is not only unsworn, but not even signed and is clearly insufficient under CPLR 3123 (subd [a]). (Respondents’ counsel eventually stipulated to admit all items except those numbered 2 through 8.)
The notices to admit truth of fact each include as item numbered 1, a simple statement: "That the State equalization rate for the Town of Haverstraw” for each of the respective years was a certain percentage (except that for 1978, that the rate was "not yet established”). Other items in the notices to admit related to the basic jurisdictional allegations and the balance to the use of the State rates by the municipality for various purposes, none of which are relevant to real property tax assessment or to these proceedings. Significantly, the petitioners’ notices contain no allegations that the itemized ratios were the ratios applicable to these proceedings or that such ratios were the ratios between the assessments and the fair market values in the taxing unit.
Petitioners next introduced as Exhibits 25 through 28 in evidence, certificates and back-up material from the State Board of Equalization and Assessment regarding the rates established for the assessment years 1974 through 1977. No witnesses testified regarding these exhibits.
Lastly, petitioners put the respondents’ Town Attorney, the trial attorney in these proceedings, on the stand and elicited from him no relevant testimony on the issue of inequality.
The only proof before the court, therefore, on the issue of inequality is what the State rates as found by the State Board of Equalization and Assessment were for the years 1974 through 1977.
These consolidated proceedings were tried before the court in March, 1979, but not fully submitted until November. At the time of the trial, proof on the issue of inequality was limited by subdivision 3 of section 720 of the Real Property Tax Law to the selected parcel method, actual sales method (neither of which methods was utilized herein), and by "evidence * * * as to * * * the state equalization rate established for the roll containing the assessment under review.”
In attempting to prove ratio for years after 1970, a petitioner may rely solely on the State Board of Equalization assessment rate. In Guth Realty v Gingold (41 AD2d 479, affd 34 NY2d 440), 860 Executive Towers v Board of Assessors of Nassau County (84 Misc 2d 525, affd 53 AD2d 463) and Matter of Lawrence Investing Co. v Board of Review of Dept. of *928 Assessment of Town of Eastchester (86 Misc 2d 642, affd 44 AD2d 677), there are to be found exhaustive discussions on the law relating to the use of the State Board of Equalization and Assessment ratio in inequality proceedings and this court will not restate the law herein. Proof is required, however, that such use of the State rate is justified in the particular case in which it is relied upon. (Guth Realty v Gingold., 34 NY2d 440, 450, supra.) As was stated by the court in the Lawrence case (86 Misc 2d 642, 650, supra): "This court concedes immediately that there need no longer be exhaustive testing of the State Board of Equalization and Assessment’s methodology nor proof of the general detail of that board’s procedures in view of both Guth and Matter of 860 Executive Towers. However, when one seeks to rely upon the State ratio, and that ratio has been denied or has not been stipulated, then that person must justify its use by showing it pertains specifically to the taxing unit and that it is statistically accurate. Among other things, the party seeking to justify the State rate should furnish evidence among other things to show the various parcels included in the sampling by the board of the assessing unit involved and the types of property making up that sampling.” (See, also, Matter of Standard Brands v Walsh, 92 Misc 2d 903, 911, affd 60 AD2d 605; Nycrest Corp. v Board of Assessors of Town of Philipstown, Supreme Ct, Putnam County, April 23, 1979; Matter of Ryder Farm v Assessors & Bd. of Assessment Review, Town of Southeast, Supreme Ct, Putnam County, May 21, 1979.)
On the record herein, the petitioners’ proof falls far short of what is required for this court to accept the bare fact of what the State rate was for the years under review as being of any probative value on the issue of inequality.
After both sides presented all of their evidence and rested, but before this case was fully submitted to the court, respondents made a motion on papers to "renew its objection to the introduction of the computer print-out of equalization prepared by the State Board of Equalization and Assessment * * * and dismissing the petitions.” The basis of the respondents’ motion is the enactment by the State Legislature of chapters 126 and 127 of the Laws of 1979, effective May 22, 1979. The petitioners thereupon cross-moved for an order declaring chapters 126 and 127 unconstitutional. In view of the attack on the constitutionality of the statutes, this court officially notified the Office of the Attorney-General of the *929 State of New York who replied by letter dated November 5, 1979, advising the court that the Attorney-General’s office determined that it would not intervene "at this time.” In support of the cross motion, petitioners rely entirely on the decision of Mr. Justice Farley dated August 2, 1979 in Matter of Industrial & Research Assoc. (Board of Assessors of County of Nassau) (NYLJ, Aug. 21, 1979, p 10, col 1), wherein the court held that chapters 126 and 127 were unconstitutional. Section 1 of chapter 126 sets forth a legislative determination that State equalization ratios in tax assessment review proceedings "are not capable of valid application to assessments of business and commercial properties as well as residential properties in the particular assessing unit. Moreover, in many instances the use of such equalization rate has not proven to be valid even in connection with the same types of property, and has often resulted in undesirable and unintended results.” The Legislature further found that the equalization rates were "never intended to determine property values for taxing purposes” and that the use of such rates "for the purpose of quantifying the ratio of assessment to market value within a taxing district produces spurios and counterproductive results.” Having made such determination, the Legislature thereupon changed subdivision 3 of section 720 of the Real Property Tax Law by deleting the reference to the State equalization rate as a method of proving inequality, and further enacted chapter 127 to amend chapter 126 to allow the owners of residential structures containing no more than three dwelling units, at least one of which is owner occupied, to introduce "any evidence deemed relative and material” to establish inequality notwithstanding its legislative determination set forth in chapter 126, thereby tacitly permitting the court to consider the State ratio as evidence of inequality in such cases. Section 1 of chapter 127 sets forth that the amendment of chapter 127 is enacted "in an effort to provide a remedy which would enable the individual, residential owner-petitioner to assemble and present in a summary and inexpensive manner evidence of inequality of assessment in review proceedings”. Chapter 127 further provided that its provisions should be deemed and construed as remedial in nature, and provided further that the enactment would be applicable to any proceeding commenced on or after January 1, 1970 and effective immediately.
In finding these enactments unconstitutional, Justice *930 Farley set forth the legislative history of the use of equalization ratios in tax assessment review proceedings in a most cogent manner. The Legislature first allowed for the introduction of State equalization ratios by amending subdivision 3 of section 720 of the Real Property Tax Law by chapter 942 of the Laws of 1961, and in view of the Court of Appeals’ decision in O’Brien v Assessor of Town of Mamaroneck (20 NY2d 587), the Legislature again amended subdivision 3 of section 720 to overturn the holding reached in the O’Brien case, which case has held that proof of the State rates independently of the other methods of proof set forth in subdivision 3 of section 720 was insufficient to establish inequality. Thereafter, use of the State equalization ratios as the sole basis for determining ratio was approved by the Court of Appeals in Guth Realty v Gingold (34 NY2d 440, supra). Justice Farley found that the legislation was procedural and acknowledged the rule that methods of proof and the remedies by which rights of the litigants are enforced or defended fall within the control of the Legislature (citing People v Turner, 117 NY 227, 145 NY 451, affd sub nom. Turner v New York, 168 US 90; Howard v Moot, 64 NY 262; 9 NY Jur, Constitutional Law, § 248; 21 NY Jur, Evidence, § 6). He then found that the statutes constituted a deprivation of due process by preventing "a judicial body from ascertaining facts in litigation by inhibiting its consideration of evidence”. (Matter of Industrial & Research Assoc. [Board of Assessors of County of Nassau], NYLJ, Aug. 21, 1979, p 10, col 3, supra.) The fact that the New York Court of Appeals has found in the Guth and 860 Executive Towers cases that the State ratios were competent evidence of ratio because objectively and expertly arrived at does not, in this court’s opinion, prevent the State Legislature from changing the rule of evidence which permits their consideration by the court. To that extent, this court disagrees with Justice Farley and his statement that "chapters 126 and 127 of Laws of 1979, cannot, without transgressing due process, arbitrarily deny a taxpayer the right of presenting evidence in his behalf that is directly relevant, material, and competent on the issue being contested in a tax review proceeding.” (Matter of Industrial & Research Assoc. [Board of Assessors of County of Nassau], supra, p 10, col 3.)
It is clear that a litigant possesses no vested rights in a rule of evidence. (Cook v Town of Nassau, 40 AD2d 1050, affd 33 NY2d 7; Preston Co. v Funkhauser, 261 NY 140, 144, affd 290 *931 US 163; Board of Comrs. of Excise of City of Auburn v Merchant, 103 NY 143; 1 Wigmore, Evidence, § 7, p 213.) The Legislature clearly has the power to prescribe new rules of evidence, as well as the power to alter existing rules of evidence or prescribe methods of proof. (Board of Comrs. of Excise of City of Auburn v Merchant, supra; People v Turner, 117 NY 227, supra; People ex rel. Clark v Gilchrist, 243 NY 173, 185.) This legislative power is limited only by the constitutional guarantees of due process of law and equal protection of law. (21 NY Jur, Evidence, § 6.) The petitioners on this motion attack chapters 126 and 127 of the Laws of 1979 on the ground that they deny them due process and equal protection. In passing upon the constitutionality of any statute, the first rule to be considered by the court is the strong presumption of constitutionality which applies to any enactment of the Legislature. The presumption is rebuttable, but unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort can legislation be struck down as unconstitutional. The Legislature is presumed to have investigated the need for the enactment, and if any state of facts known or to be assumed, justifies the disputed measures it must be upheld. (Lighthouse Shores v Town of Islip, 41 NY2d 7; Montgomery v Daniels, 38 NY2d 41, 54; Matter of Van Berkel v Power, 16 NY2d 37; I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263; Defiance Milk Prods. Co. v Du Mond, 309 NY 537.) Justice Farley, in Matter of Industrial & Research Assoc. (Board of Assessors of County of Nassau) (NYLJ, Aug. 21, 1979, p 10, cols 1, 3, supra), found that chapters 126 and 127 were unconstitutional because "arbitrarily deny[ing] a taxpayer the right of presenting evidence in his behalf that is directly relevant, material, and competent on the issue being contested” and "equally repugnant to state and Federal constitutional mandates that no person be denied the equal protection of the law.”
At the outset, this court agrees that the aforesaid statutes deny equal protection and are unconstitutional on said grounds. The Fourteenth Amendment of the United States Constitution requires that no person or class of persons be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances. (Missouri v Lewis, 101 US 22, 31; Salsburg v Maryland, 346 US 545.) The subject statutes are unconstitutional because they permit one class of taxpayer to rely on *932 evidence of ratio while prohibiting all others from using the same method of proof. This defect takes on added dimensions when the statute is also to be applied retroactively to litigants who have a constitutionally vested right to a refund of excess tax payments. (People ex rel. Warren v Carter, 109 NY 576; Matter of Slewett & Farber v Board of Assessors of County of Nassau, 97 Misc 2d 637, 651; see, also, Matter of Furey v Graves, 148 Misc 785, affd 241 App Div 897, affd 266 NY 415.)
This court has found no cases where, in the same kind of proceeding, certain evidence that might be material and relevant for one class or group of litigants is statutorily excluded as evidence for a different class, particularly where, as in the statutes under review, there has been a legislative finding as set forth in section 1 of chapter 126, that such evidence as the State rates are not capable of valid application, a finding which is clearly within the Legislature’s authority to make. In this court’s view, the Legislature would have the authority to eliminate completely this method of proving unequal assessments for all taxpayers but the limitation to a particular class of taxpayer renders the statute unconstitutional.
Furthermore, the extent of the retroactive applicability enacted by the legislature is clearly unconstitutional for the reasons set forth in Matter of Slewett & Farber (supra), which the court will not go into at length herein.
In any event, since chapters 126 and 127 of the Laws of 1979 were enacted after the conclusion of the trial had herein, and by subdivision 4 of chapter 126 were to be applicable immediately to any proceeding commenced after January 1, 1974 (changed to 1970 by chapter 127) and not finally determined as of the effective date of the statute, the statutes, if constitutional, could be applied to cases which are pending but not to procedural steps already taken. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 55; Matter of Bercovitz v Arbib & Houlberg, Inc., 230 NY 261, 272; People ex rel. Central New England Ry. v State Tax Comm., 261 App Div 416; Shielcrawt v Moffett, 294 NY 180, 190; Poalilio v Beth-page Park Auth., 45 Misc 2d 223.) Therefore, for the reasons set forth herein, the court finds the aforesaid chapters 126 and 127 of the Laws of 1979 to be unconstitutional, but even were they to be found otherwise, they would not be applicable to the steps already taken in the prosecution of these consolidated proceedings.
By virtue of the petitioners’ failure to prove ratio and *933 inequality, the court must dismiss the petitions and it is not necessary for the court to consider the testimony on valuation, since without having established the correct ratio for each of the years under review, there is no way for the court to determine the correct assessments.
All motions made during the trial on which the court reserved decision and which are not explicitly referred to herein are denied.