OPINION OF THE COURT
Stephen A. Bucaria, J.
Preliminary Statement
The petitioner moves for an order restoring the proceedings to the ready trial calendar of the tax certiorari part of the Supreme Court, and requests the scheduling of an appraisal exchange date. The respondents oppose the application on the ground that the application is made more than three years from the August 25, 1999 date on which the matter was removed from the trial calendar, and that payments of refunds with interest as far back as 1996 would create fiscal chaos, and be prejudicial to the County.
Background
In 1993, during the height of what could only be classified as a tax certiorari crisis in Nassau County, the Honorable Leo F. McGinity, then the Presiding Justice and Administrative Judge, sought to reduce the extraordinary backlog of such matters on the active trial calendar. The depth to which the system had descended was described in detail by the now-deceased Honorable Frank Rossetti, J.C.C. in his decision in Boardwalk Condominium No. I v Board of Assessors (index Nos. 18523/86, 17-8708/89).
Following a highly critical National Center for State Courts analysis of tax certiorari calendar problems in Nassau County, a copy of which went to Honorable Leo Molinas, the then Chief Administrative Judge for the New York State Courts, Justice McGinity instituted monthly calendar calls of 500 tax certiorari cases. These calendar calls were to continue until all cases on the ready trial calendar were reached. Once called, the cases were removed from the ready calendar and transferred to a reserve calendar. Blanket orders exempting the cases from the impact of Civil Practice Law and Rules § 3404 were to issue, and no additional notes of issue were required for restoration. *217 At a “report-back” date, six months thereafter, the cases would be marked either “settled” or “discontinued.” Cases which were so marked could be restored to the ready trial calendar upon the filing by the petitioner of an appraisal.
This case is one of the thousands that were marked off the ready trial calendar in accordance with the foregoing procedure. A note of issue for tax year 1996/1997 was filed on or about October 8, 1997. It appeared on the August 25, 1999 calendar at which time it, along with all other cases appearing on the calendar, was “marked off.” The purpose was to allow the County to obtain limited appraisals for negotiation purposes. It was not until September 2001 that the County advised petitioner’s counsel of the assigned appraiser, and, in January 2002 the requisite information was forwarded to him.
Upon being notified in mid-2005 that the Nassau County Assessment Review Commission (ARC) had scheduled a hearing for all tax years under review for September 28, 2005, counsel submitted updated and additional information to them, as well as to the County’s designated appraiser. Upon receipt of a preliminary appraisal of his own, counsel forwarded the conclusions of overassessment to ARC, and, by letter dated October 6, 2005, requested a conference with the County Attorney’s Office. It was not until May 6, 2006 that the County authorized its appraiser to prepare a preliminary appraisal for the years under review.
Conferences on September 27, 2006 and January 12, 2007 were not fruitful, after which counsel supplied ARC with additional financial information with respect to the cost to remediate the presence of volatile organic compounds, which were first discovered at the site in the mid-1990s. The New York State Department of Environmental Conservation (NYSDEC) classified the premises as a class 2 inactive hazardous waste disposal site in 2000.
After failing to resolve the matter through administrative efforts between 2001 and 2008, the petitioner asks the court to restore it to the active trial calendar and set a date for the exchange of expert reports.
Historical Setting
Tax certiorari proceedings have occupied an inordinately disproportionate amount of judicial resources in Nassau County for many years. Boardwalk Condominium No. I v Board of Assessors (supra) notes that, as far back as 1990, tax certiorari *218 matters occupied almost 40% of the ready trial calendar in Nassau County. But major, and even landmark, decisions on tax assessment matters long predated 1990.
In 860 Executive Towers v Board of Assessors of County of Nassau (53 AD2d 463 [2d Dept 1976]), the Court was called upon to review a decision of the Honorable Howard T. Hogan, J.S.C., in which he granted motions by the petitioners in 20 consolidated actions for partial summary judgment on the issue of inequality of assessment and determined ratios for each of the actions for the years 1966-1973. The County sought to limit a decision of the Court of Appeals, Ed Guth Realty v Gingold (34 NY2d 440 [1974]), which approved the use of the state equalization rate as the sole determinant of ratio in tax certiorari proceedings from 1970 forward, in keeping with the 1969 amendment of Real Property Tax Law § 720. That amendment was specifically enacted to overcome the decision of the Court of Appeals in Matter of O’Brien v Assessor of Town of Mamaroneck (20 NY2d 587, 596 [1967]), which determined that the state rate was entitled to “little weight,” because those rates were derived by processes foreign to those employed in juridical proceedings.
As noted in 860 Executive Towers (at 469), the County’s rejection of Guth required proceedings which
“consumed many months, cost the petitioners over $400,000 in expenses, fees and disbursements, and resulted in a 14-volume record on appeal, plus numerous cartons of exhibits. The trial was not merely a replay of the Guth trial but, in point of fact, an intensive and exacting examination of the SBEA’s methodology applied to Nassau County, despite the fact that the Guth decision predated this ratio trial by several months.”
In affirming the judgment, interlocutory judgment and orders of the Supreme Court, the Court made it clear that all of the effort and expense generated by the Board of Assessors and other appellants was essentially a waste, in that Guth was directly on point, and indistinguishable from the appellants’ claims.
Nevertheless, the Appellate Division granted leave to appeal and certified the following question to the Court of Appeals: “Was the order of this court dated July 12, 1976 properly made?” The Court of Appeals responded in the affirmative and affirmed on the decision of the Appellate Division in Matter of Pierre Pellaton Apts. v Board of Assessors of County of Nassau (43 NY2d 769 [1977]).
*219 Commercial properties have not been the sole source of the inordinate backlog of tax certiorari matters in the County. In Matter of Chasalow v Board of Assessors of County of Nassau (202 AD2d 499 [2d Dept 1994]), the Court reviewed a determination of the Honorable Leo F. McGinity, J.S.C., that the methodology used by the Nassau County Department of Assessment to assess class I properties (one-, two-, and three-family homes) produced such wide disparities in similarly situated homes so as to constitute a violation of the Equal Protection Clauses of the US and NY Constitutions. The proceedings pursuant to CPLR article 78 were to review 10 separate determinations.
Until the relatively recent revaluation and reassessment of all property in Nassau County, assessments for class I property was based on 1938 construction costs, to which was added the 1938 land value, updated to 1964. Utilizing a coefficient of dispersion, the petitioners claimed, through expert testimony, that this measurement showed a wider variance among ratios under consideration than the State Board of Equalization and Assessment recommended. In fact, the State showed that only about 7% of taxing authorities met the standards for 1986 data, and that the proper coefficient of dispersion for Nassau was 15%.
In reversing the decision of Supreme Court, the Appellate Division noted that in the area of real property taxes, “rough equality, not complete uniformity, is all that is required.” (202 AD2d at 501.) Leave to appeal to the Court of Appeals was denied. (Matter of Chasalow v Board of Assessors of County of Nassau, 83 NY2d 759 [1994].)
The claimed “fiscal chaos” which will attend the restoration to the calendar of this action is not an unfamiliar refrain. In a matter presently sub judice before the Honorable Edward G. McCabe, the County argued this position in the Court of Appeals, which remitted the matter to Supreme Court for a hearing on the issue of the fiscal impact upon the County. (New York Tel. Co. v Nassau County, 1 NY3d 485, 491 [2004].) Upon remittitur, the County has taken the position that there is no economic impact upon the County, because, despite the determination of the Court of Appeals, the burden for tax refunds is upon the special districts, not on the County. This would restore the interpretation by the Appellate Division, which the Court of Appeals reversed.
As the Court in New York Tel. Co. pointed out, there have been cases in which the Court has refused to grant the relief requested based on the effect it would have on the municipality, *220 but such relief is not available in the absence of a determination of the amount of the refund and the impact on the County. (Id.) In the matter before this court, there has not even been a determination of liability for overassessment, much less evidence of its impact upon the County.
The present matter is part of what is likely the most onerous burden that the court has been asked to shoulder in many years. The simple fact is that because of the inability of the respondents to administratively resolve a significant number of the assessment challenges filed annually in the years 1993-2003, this court has become the residuary of all such claims. In what was an accommodation to the respondents, the court (McGinity, J.) struck from the active trial calendar many thousands of cases, so as to enable the respondents to obtain appraisals which were adequate for negotiation, if not for trial. The seven-year travail of petitioner’s counsel, culminating in the current motion, appears to be the upshot of the accommodation afforded the respondent by the petitioner’s voluntary agreement to permit matters to be stricken from the trial calendar.
Discussion
The respondents oppose the application to restore the matter to the trial calendar because it was not restored “within the three year time period after the matter was marked off/settled on the Court’s Calendar.” They reference the December 20, 2007 decision and order of the Honorable Joseph A. DeMaro (Cento Props. Co. v Board of Assessors, index No. 24134/99) in support of their claim of the existence of such a rule. That order, entered on January 3, 2008, is currently the subject of a motion to reargue before this court. It provides in pertinent part as follows:
“Pursuant to a long abandoned procedure done on consent of parties, tax certiorari matters might be marked ‘settled’ subject to further negotiation. If the matters were not settled the petition [sic] would, by letter, seek a restoration to the calendar. The procedure called for such effort within three years of the marking.
“This matter was marked ‘settled’ on September 25, 2001. The cause is clearly well outside the agreed upon procedure.”
The closest thing to a description of the “long abandoned procedure” is the July 26, 1993 communication by counsel for *221 petitioner, in his capacity as chairman of the tax certiorari committee of the Nassau County Bar Association, in which he outlines the “New Calendar Procedure” as previously described. It does not make reference to a three-year limit within which to restore, and no document to such effect has been produced in opposition to the motion.
Whether or not there was such an agreement is irrelevant. Calendar practice in New York State is controlled by Civil Practice Law and Rules §§ 3404 and 3216, and decisions interpreting them. For matters in which a note of issue has been filed, the striking from and restoration to the active trial calendar is governed by section 3404. When there has been no note of issue filed, the process is mandated by section 3216. Uniform Rules for Trial Courts (22 NYCRR) § 202.59 (d) (2) requires a note of issue for each property for each year.
There has been only one note of issue filed in this matter, for tax year 1996/1997. Annexed to the note of issue is a general stipulation, designed to obviate some of the requirements of Real Property Tax Law § 718, including the time within which notes of issue for subsequent years are to be filed. Paragraph 8 of the stipulation provides as follows:
“8. Petitioner(s) or its successors in interest shall file a Note of Issue for each tax review proceeding referred to in paragraph 7 not later than the time required to furnish a proposed stipulation of consolidation set [forth] in paragraph 1, provided that such notes of issue are required for an order of consolidation.”
There is only one year under review which is arguably governed by section 3404. Because the matter was removed from the calendar to accommodate the respondents, not because of any failure on the part of the petitioner, one could reasonably argue that the standards of vacating a default are inapplicable. (Denver v American Home Prods. Corp., 138 AD2d 670 [1988].) For the purpose of this motion, however, the court will consider whether or not there has been compliance with section 3404. The balance are all pre-note of issue cases and are governed by section 3216. (Lopez v Imperial Delivery Serv., 282 AD2d 190 [2d Dept 2001]; see also Jiles v New York City Tr. Auth., 290 AD2d 307 [1st Dept 2002].)
Post-Note of Issue Matter
Civil Practice Law and Rules § 3404 provides as follows:
“A case in the supreme court or a county court *222 marked ‘off or struck from the calendar or unanswered on a clerk’s calendar call, and not restored within one year thereafter, shall be deemed abandoned and shall be dismissed without costs for neglect to prosecute. The clerk shall make an appropriate entry without the necessity of an order.”
In Basetti v Nour (287 AD2d 126, 133 [2d Dept 2001]), the Court explained the current rules governing calendar practice, and its interpretation of section 3404. When a case is called for trial and one or more of the parties fails to appear or for some reason is unable to proceed,
“[t]he trial court has the discretion to (1) adjourn the trial to another date, (2) mark the case ‘off or strike it from the calendar pursuant to CPLR 3404, (3) vacate the note of issue pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 202.21 (e), or (4) dismiss the complaint or strike the answer pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 202.27.” (Id.)
When the party seeks to restore within one year of the date of the marking, there are no requirements for the showing of a reasonable excuse, meritorious cause of action, lack of intent to abandon, and lack of prejudice to the opposing party. After one year, the standards necessary to vacate a default apply (id. at 135; see also McClure v Schindler El. Corp., 297 AD2d 335 [2d Dept 2002]).
Although a case which has been marked off, or stricken from the calendar, and not restored within one year is deemed abandoned and is dismissed (CPLR 3404), the statute only creates a rebuttable presumption of abandonment (Rodriguez v Middle Atl. Auto Leasing, 122 AD2d 720 [1986], appeal dismissed 69 NY2d 874 [1987]). In Leonardelli v Presbyterian Hosp. in City of N.Y. (288 AD2d 105, 106 [1st Dept 2001]), the Court reiterated the four-pronged test for restoration and, quoting Weiss v City of New York (247 AD2d 239, 240 [1st Dept 1998]), noted that the purpose of the statute was to strike “actually dead” cases, and that the Court would look not to the technicalities, but rather to the totality of the circumstances. Of some note is the requirement in the First Department that the proof required to vacate a default is necessary even when the restoration is within one year. (Palermo v Lord & Taylor, 287 AD2d 258 [1st Dept 2001].)
In order to restore a matter in which a note of issue was filed and more than one year has passed since the matter was marked *223 off the calendar, the movant must overcome the rebuttable presumption that the matter has been abandoned. (Krichmar v Queens Med. Imaging, P.C., 26 AD3d 417 [2d Dept 2006].) Looking at the totality of circumstances, it is clear that the petitioner did not intend to abandon the matter. As previously noted, the petitioner sought in vain to engage the respondents in meaningful settlement discussions between 2000 and the end of 2007. After learning in September 2001 that the County had designated an appraiser, counsel diligently forwarded financial and sales information to him.
He continued to submit financial and other information to the appraiser and ARC over the ensuing years. But the County did not authorize the preparation of a preliminary appraisal until May 2006. Two conferences with the counsel for the County and appraisers for both sides did not resolve the matter. Nevertheless, counsel continued to supply financial information and documentation of the proposed remedial action to resolve the contamination at the site. Only when all efforts failed to ^produce a resolution did he seek to restore the matter to the trial calendar.
There is a reasonable excuse for the failure to restore the matter to the calendar sooner. It was not until 2007 that the respondents were first prepared to conduct a meaningful settlement conference. The whole purpose of the plan to remove the cases from the calendar was to effectuate settlement discussions. The fact that it took almost eight years for the respondents to come to the table is not the fault of the petitioner.
The petitioner has also established, as required, that there is a meritorious cause of action, that there was no intention to abandon, and that the respondents have not been prejudiced. Annexed to the moving papers is a spreadsheet analysis reflecting indicated reductions, the NYSDEC decision with respect to contamination at the site, the proposed remedial action plan, at a cost in excess of $500,000, and the contract of sale for the premises, which is conditioned on a change of zone.
Pre-Note of Issue Matters
Civil Practice Law and Rules § 3216 provides in pertinent part as follows:
“Rule 3216. Want of prosecution
“(a) Where a party unreasonably neglects to proceed generally in an action or otherwise delays in the *224 prosecution thereof against any party who may be liable to a separate judgment, or unreasonably fails to serve and file a note of issue, the court, on its own initiative or upon motion, may dismiss the party’s pleading on terms. Unless the order specifies otherwise, the dismissal is not on the merits.
“(b) No dismissal shall be directed under any portion of subdivision (a) of this rule and no court initiative shall be taken or motion made thereunder unless the following conditions precedent have been complied with:
“(1) Issue must have been joined in the action;
“(2) One year must have elapsed since the joinder of issue;
“(3) The court or party seeking such relief, as the case may be, shall have served a written demand by registered or certified mail requiring the party against whom such relief is sought to resume prosecution of the action and to serve and file a note of issue within ninety days after receipt of such demand, and further stating that the default by the party upon whom such notice is served in complying with such demand within said ninety day period will serve as a basis for a motion by the party serving said demand for dismissal as against him for unreasonably neglecting to proceed.”
“In the absence of a 90-day notice pursuant to CPLR 3216, restoring a case marked ‘inactive’ is automatic.” (Andre v Bonetto Realty Corp., 32 AD3d 973, 975 [2d Dept 2006] [citations omitted].) The four-prong test for restoring the matter to the trial calendar is inappropriate, and there was no basis for denial of the motion to restore the case to active status and certainly no ground for dismissing the action. (Id.)
Conclusion
The motion to restore the proceeding for tax year 1996/1997, for which a note of issue was filed, is granted. Petitioner has satisfied the four-prong test of meritorious cause of action, reasonable excuse for the delay, lack of intent to abandon the action, and lack of prejudice to the respondent. The claimed prejudice of “fiscal chaos” is at best premature, since there has not yet been a determination in this proceeding as to whether or not there has been an overassessment requiring a refund. In addition, the court is addressing herein a single case.
*225 The motion to restore the proceedings for years subsequent to tax year 1996/1997 do not require satisfaction of the test required under Civil Practice Law and Rules § 3404. The motion is granted, and the petitioner is free to file notes of issue for each subsequent year as required by Uniform Rules for Trial Courts (22 NYCRR) § 202.59.
The parties shall exchange trial appraisal reports conforming to section 202.59 (g) of the Uniform Rules for Trial Courts (22 NYCRR), within 60 days of the receipt of a copy of this order with notice of entry.